**RECORD IMPOUNDED**


NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION


SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2533-14T3


NEW JERSEY DIVISION OF CHILD PROTECTION
AND PERMANENCY,

    Plaintiff-Respondent,

v.

S.G.,

    Defendant-Appellant.

_____

IN THE MATTER OF A.G. and G.W.G.,

    Minors.

_____

**APPROVED FOR PUBLICATION**

**December 15, 2016**

**APPELLATE DIVISION**

Submitted September 28, 2016 — Decided  December 15, 2016

Before Judges Fuentes, Simonelli and Gooden Brown.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FN-04-608-13.

Joseph E. Krakora, Public Defender, attorney for appellant (Cecilia M.E. Lindenfelser, Designated Counsel, on the briefs).

Christopher S. Porrino, Attorney General, attorney for respondent (Andrea M. Silkowitz, Assistant Attorney General, of counsel; Matthew D. Lane, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Linda Vele Alexander, Designated Counsel, on the brief).

The opinion of the court was delivered by

GOODEN BROWN, J.S.C. (temporarily assigned).

Defendant S.G. (Sandra)[1] appeals from the Family Part's July 29, 2013 fact-finding order, finding that she abused or neglected her two-year-old daughter, A.G. (Ava), within the meaning of N.J.S.A. 9:6-8.21. The court terminated litigation on December 19, 2014, and granted sole legal and physical custody of Ava to B.G. (Beth), defendant's mother.

Defendant argues that the court's finding of abuse and neglect was not supported by sufficient competent material and relevant evidence. Defendant also argues that she was not afforded effective assistance of counsel due to trial counsel's failure to require testimony by New Jersey Division of Child Protection and Permanency (Division) caseworkers as a condition of agreeing to the admission of documents. The Division and the child's Law Guardian join in opposing the appeal. For the following reasons, we vacate the finding of abuse and neglect, and remand for a testimonial fact-finding hearing.

---

[1] We use pseudonyms for the reader's convenience and to protect the privacy of the child. R. 1:38-3(d)(12).

A-2533-14T3

The fact-finding order was entered after what can best be described as a "trial on the papers." That is, the court decided the case based on various redacted documents offered into evidence by the Division. Defendant did not object to the Division's evidence or offer any proofs at the hearing. The pertinent evidence in those documents is as follows.

By way of background, the Division became involved with defendant in May of 2011 after receiving a referral that defendant was operating a motor vehicle while under the influence with Ava, then six months old, in the car. Through the ensuing investigation, the Division confirmed that defendant used marijuana, but concluded there were no safety or red flag issues present. As a result of this referral, defendant completed a substance abuse evaluation and treatment for cannabis dependence.

Pertinent to this appeal, on March 8, 2013, the Division received a referral that the Pine Hill Police Department had executed a search warrant at defendant's home, where she lived with her brother, S.G. (Scott), her mother, and Ava. Acting on information that defendant's boyfriend, M.W. (Michael), was selling drugs out of defendant's home, the police conducted an undercover investigation over a two-week timespan.

During the investigation, undercover police officers entered the home and purchased marijuana from Michael on March 1 and March

5, 2013. While conducting surveillance of the home, officers observed several individuals enter and exit within one-minute intervals, "consistent with drug trafficking." The controlled drug purchases and the surveillance provided sufficient evidence to obtain a search warrant for the home.

After executing the search warrant, police confiscated methamphetamine, marijuana, and drug paraphernalia from the home. Michael was arrested but all other residents of the home were cleared of involvement. The execution of the warrant, coupled with the condition of the home, which police described as deplorable, provided the basis for the police referral to the Division.

When Division caseworkers arrived at the home on March 8, 2013, they observed clutter in the front room, which was separated from the rest of the house by a second door. The living room, dining room and kitchen were much cleaner, and free of clutter. In Ava's room, there were "clothes piled up in a corner, a crib, and two mattresses on end against the wall." The caseworkers were informed that the mattresses were placed against the wall in the "raid."

Following the walkthrough, the caseworkers concluded that the home was not deplorable. Additionally, the workers described Ava's appearance during the visit as "happily playing[,] . . .

clean and well nourished." During the visit, the caseworker informed defendant of the dangers of allowing Ava to be present in a home with drug activity. Defendant admitted to the caseworker that she, her brother, and her boyfriend smoked marijuana, but stated that it did not occur in Ava's presence. Specifically, "[defendant] reported that it was only in the front room and [Ava] is never in there as there is a childproof cover on the door between the living area and the front room."

When questioned further, defendant admitted that she was aware that Michael had sold drugs to "local friends", but denied having knowledge that methamphetamines were in the home. Defendant's mother, who owned the home, reportedly was unaware that drug sales were occurring in her home, and did not know that defendant and Michael were using drugs, as, according to defendant, she would disapprove.

During a follow-up visit to the home on March 11, 2013, Division caseworkers observed that the home was neat and clean, and saw no indication that defendant was under the influence of marijuana. Defendant informed the caseworkers that the family had cleaned up after the "raid." At the Division's request, defendant agreed to participate in a safety action plan, which allowed Ava to remain in her custody but required that all contact with Ava

be supervised by Ava's maternal great-grandmother, E.F. (Mrs. Franklin), who resided in a home directly behind defendant's.

On April 2, 2013, the Division filed a verified complaint,[2] pursuant to N.J.S.A. 9:6-8.21, N.J.S.A. 30:4C-12 and Rule 5:12-1, seeking care and supervision of Ava in order to ensure that defendant completed the services the Division had requested. At the initial order to show cause hearing on April 4, 2013, the court granted the Division's request and continued Mrs. Franklin as the primary supervisor for all contact between Ava and defendant.

At the pre-trial conference on July 1, 2013, the Division offered into evidence four documents: (1) the Investigation Summary, which recounted the Division's March 8, 2013 interviews; (2) the Pine Hill Police Department Investigation Report, which detailed the events leading up to and occurring on the date of the drug raid; (3) the Investigation Summary, summarizing the Division's May 6, 2011 prior contact with defendant; and (4) a June 24, 2013 court report attaching a letter from the Division to Beth ruling her out as a supervisor. All parties agreed on

---

[2] Defendant's boyfriend, Michael, who described himself as Ava's father-figure, was a named party in the complaint but is not a party to this appeal. Ava's biological father, D.A., was a potential dispositional party but passed away during the pendency of these proceedings.

redactions to the documents, which were subsequently admitted into evidence without objection.

On July 29, 2013, at the fact-finding hearing, no testimony was presented and the Division relied solely on the above-mentioned documents. After considering the evidence, the court concluded that defendant had abused or neglected Ava within the meaning of N.J.S.A. 9:6-8.21. The court reasoned:

> [Defendant] admitted to being aware of drug use. She admitted her own drug use. She claimed it was only when the child was in the care of her mother. She admitted that . . . she was aware that her brother smoked marijuana. She was aware that [Michael] did as well.
>
> There's no specific admissions from her that it happened in the home. There's also no specific admission from her that she was actually aware that [Michael] was selling drugs out of the home.
>
> I find it's more likely than not that she did know, given the drug use that was happening in the home, and the frequent comings and goings of strangers to the home, coming in, leaving promptly, there's no indication that she was not in the home at the time that the surveillance took place. It was in the middle of the day. 1 o'clock. One is at noon and the other at 6:30 p.m. There's no indication that she was working or not in the home.
>
> So the combination of both allowing drug use in the home, where she and her young child were living with others, also permitting drug dealing to take place, or being aware of it, and doing [nothing] about it, to remove the

child from that kind of danger, that . . . is also reckless conduct that put the child at substantial risk of harm.

Over the next several months, periodic compliance reviews were conducted,[3] until the litigation was terminated by order dated December 19, 2014, with sole legal and physical custody of Ava being granted to Beth.[4] This appeal followed.

As a threshold matter, our standard of review is narrow. It is well established "that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare v. Cesare, 154 N.J. 394, 411-12 (1998). This court accords deference to the Family Part's findings of fact "because it has the superior ability to gauge the credibility of the witnesses who testify before it and because it possesses special expertise in matters related to the family." N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448 (2012) (citations omitted).

However, "that deference is perhaps tempered when the trial court did not hear testimony, or make credibility determinations

---

[3] On April 17, 2014, the Division filed an Amended Complaint for care and supervision of G.W.G (Gabby), defendant's second child, born in February 2014, which the court granted. Michael is the biological father of Gabby.

[4] The December 19, 2014 order also granted physical custody of Gabby to Beth, with joint legal custody to Beth and Michael.

based on the demeanor of witnesses." N.J. Div. of Child Prot. & Permanency v. J.D., __ N.J. Super. __ (App. Div. 2016) (slip op. at 18).  Indeed, "when no hearing takes place, no evidence is admitted, and no findings of fact are made, . . . appellate courts need not afford deference to the conclusions of the trial court[,]" N.J. Div. of Youth & Family Servs. v. G.M., 198 N.J. 382, 396 (2009), and we will not hesitate to set aside a ruling that is "wide of the mark." N.J. Div. of Youth & Family Servs. v. P.W.R., 205 N.J. 17, 38 (2011).  Therefore, a "fact-finding hearing is a critical element of the abuse and neglect process." N.J. Div. of Youth & Family Servs. v. J.Y., 352 N.J. Super. 245, 264 (App. Div. 2002).

To succeed in a Title 9 proceeding, the Division must prove at the fact-finding hearing "that the child is 'abused or neglected' by a preponderance of the evidence, and only through the admission of 'competent, material and relevant evidence.'" P.W.R., supra, 205 N.J. at 32 (quoting N.J.S.A. 9:6-8.46(b)).  An "abused or neglected child" is, in relevant part, a child under eighteen

> whose physical, mental, or emotional condition
> has been impaired or is in imminent danger of
> becoming impaired as the result of the failure
> of his parent or guardian . . . to exercise a
> minimum degree of care . . . (b) in providing
> the child with proper supervision or
> guardianship, by unreasonably inflicting or

allowing to be inflicted harm, or substantial
risk thereof[.]

[N.J.S.A. 9:6-8.21(c)(4)(b).]

Interpreting N.J.S.A. 9:6-8.21(c)(4)(b), our Supreme Court held that mere negligence does not trigger the statute. Dep't of Children & Families v. T.B., 207 N.J. 294, 306-7 (2011); G.S. v. Dep't of Human Servs., 157 N.J. 161, 177-78 (1999). Rather, the failure to exercise a minimum degree of care "refers to conduct that is grossly or wantonly negligent, but not necessarily intentional." T.B., supra, 207 N.J. at 305 (quoting G.S., supra, 157 N.J. at 178).

Although the distinction between willful or wanton negligence and ordinary negligence cannot be precisely defined, McLaughlin v. Rova Farms, Inc., 56 N.J. 288, 305 (1970), the essence of willful or wanton negligence is that it "implies that a person has acted with reckless disregard for the safety of others." G.S., supra, 157 N.J. at 179 (citations omitted). Further, willful or wanton conduct is that which is "done with the knowledge that injury is likely to, or probably will, result[,]" and "can apply to situations ranging from 'slight inadvertence to malicious purpose to inflict injury.'" Id. at 178 (citations omitted). However, if the act or omission is intentionally done, "whether the actor actually recognizes the highly dangerous character of

her conduct is irrelevant," and "[k]nowledge will be imputed to the actor." Ibid. (citation omitted).

A determination of whether a parent's or guardian's conduct "is to be classified as merely negligent, grossly negligent, or reckless can be a difficult one." T.B., supra, 207 N.J. at 309. "Whether a parent or guardian has failed to exercise a minimum degree of care is to be analyzed in light of the dangers and risks associated with the situation." G.S., supra, 157 N.J. at 181-82. "When a cautionary act by the guardian would prevent a child from having his or her physical, mental or emotional condition impaired, that guardian has failed to exercise a minimum degree of care as a matter of law." Id. at 182. The mere lack of actual harm to the child is irrelevant, as "[c]ourts need not wait to act until a child is actually irreparably impaired by parental inattention or neglect." In re Guardianship of D.M.H., 161 N.J. 365, 383 (1999) (citation omitted).

Applying these principles, we are persuaded that the Division's proofs fell short. In this case, the Division offered as evidentiary support of their claims of abuse and neglect, reports containing the Division workers' observations and conclusions made during their investigations, as well as the police report detailing the events of the drug raid. By relying on these

redacted documents without witness testimony, the court was unable to fully engage in its duty as fact-finder.

Indeed, defendant denied that any drug use occurred in her daughter's presence. Further, although defendant admitted being aware of her boyfriend's drug dealing to "local friends", it was unclear whether defendant and her daughter were present during the transactions. Moreover, defendant was never criminally charged. We therefore find insufficient evidence for the court's inference that "it's more likely than not that she did know" of the drug activity taking place in the home. See N.J. Dep't of Children & Families v. A.L., 213 N.J. 1, 28 (2013) (concluding that "[j]udges at the trial and appellate level cannot fill in missing information on their own or take judicial notice of harm.").

N.J.S.A. 9:6-8.46(a)(3) allows admission into evidence of business records "of any condition, act, transaction, occurrence or event relating to a child in an abuse or neglect proceeding . . . [as] proof of that condition, act, transaction, occurrence or event" if it meets the prerequisites for admission of a business record. In other words, the judge must find "it was made in the regular course of the business . . . and it was in the regular course of such business to make it, at the time of the condition, act, transaction, occurrence or event, or within a reasonable time thereafter[.]" Ibid.

Although Rule 5:12-4(d) "permit[s] [the Division] to submit into evidence . . . reports by staff personnel or professional consultants[,]" pursuant to N.J.R.E. 803(c)(6) and 801(d), this court has cautioned trial courts on the dangers inherent in relying on these documents as the sole basis for deciding abuse and neglect cases. In J.D., supra, slip op. at 22-23, we stated:

> [C]ontested cases often turn on credibility determinations, which by their nature are impeded when the trial court cannot make first-hand observations of the witnesses. Additionally, the absence of live testimony obstructs the trial court's ability to obtain additional details that may be necessary to augment or clarify information contained in the documentary evidence, potentially impairing the judge's ability to make more detailed factual findings. In short, the procedure employed here, that is, submitting redacted documents in lieu of testimonial evidence, fails to allow the judge to resolve disputed issues or make credibility determinations. . . . [E]ven when the parties acquiesce to a trial "on the papers," we reiterate that fact-finding hearings must still adhere to fundamental rules of evidence and must be conducted with the formality and decorum we expect from any other adjudicative proceeding. Family Part judges are not bound by the parties' wishes to adjudicate fact-finding hearings through the expedited approach reflected here.
>
> [Ibid. (citations omitted).]

Here, there are material facts in dispute that could be elucidated in a fact-finding hearing, with the court having the benefit of, and the opportunity to make, first-hand observations

of the witnesses. It is undisputed that defendant and members of her household smoked marijuana. It is further undisputed that drugs and drug paraphernalia were found in defendant's home. However, defendant's statements to Division caseworkers that she only smoked marijuana when her daughter was either not in the home or not present were not explicitly contradicted. See N.J. Div. of Youth & Family Servs. v. V.T., 423 N.J. Super. 320, 332 (App. Div. 2011) (noting that "not all instances of drug ingestion by a parent will serve to substantiate a finding of abuse or neglect."). Additionally, defendant's knowledge of drug dealing activity in the home and the extent of Ava's exposure to these activities was disputed. Clearly, the court would have been better equipped to perform its role as fact-finder had these matters been developed more fully with evidence at a testimonial hearing.

The prevailing concern in abuse and neglect cases is the best interests of the child. See N.J. Div. of Youth & Family Servs. v. J.D. (In re J.B.), 417 N.J. Super. 1, 20-22 (App. Div. 2010). As fact-finder, the judge's determination that a child is abused or neglected "has a profound impact on the lives of families embroiled in this type of a crisis[,] . . . this critically important part of the business of the Family Part demands meticulous adherence to the rule of law." J.Y., supra, 352 N.J. Super. at 264-65.

14                                                          A-2533-14T3

Here, the Division's reports did not provide any evidence regarding how Ava's physical, mental or emotional condition might have been affected by the drug activity in the home. Since a determination of abuse and neglect requires a fact-sensitive analysis of particularized evidence, witness testimony would provide the court with the necessary facts to determine whether defendant exercised the requisite minimum degree of care necessary under the circumstances. See A.L., supra, 213 N.J. at 28 (citations omitted). Merely reciting information found in redacted documentary evidence does not constitute fact-finding. This is especially so when there are unresolved details regarding facts of consequence to the determination of an abuse or neglect finding.

Despite the completeness of the Division's reports, without the testimony of witnesses, the court is unable to fully engage in its duty as fact-finder. Since no testimonial hearing took place, and no findings of fact were made, we do not afford deference to the conclusions of the trial court. See G.M., supra, 198 N.J. at 396. We therefore vacate the July 29, 2013 fact-finding order and remand for a testimonial fact-finding hearing. In light of our disposition, we will not address defendant's second contention that she was not afforded effective assistance of counsel. The Division is directed to remove defendant's name from

15

the Child Abuse Registry within ten days of this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION