RECORD IMPOUNDED

 NOT FOR PUBLICATION WITHOUT THE
 APPROVAL OF THE APPELLATE DIVISION
 This opinion shall not "constitute precedent or be binding upon any court."
 Although it is posted on the internet, this opinion is binding only on the
 parties in the case and its use in other cases is limited. R. 1:36-3.

 SUPERIOR COURT OF NEW JERSEY
 APPELLATE DIVISION
 DOCKET NO. A-5778-14T4

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

 Plaintiff-Respondent,

v.

E.R.,

 Defendant-Appellant.
________________________________

IN THE MATTER OF L.C., a minor.

________________________________

 Submitted February 7, 2017 – Decided October 18, 2017

 Before Judges Suter and Guadagno.

 On appeal from Superior Court of New Jersey,
 Chancery Division, Family Part, Hudson County,
 Docket No. FN-09-0288-14.

 Joseph E. Krakora, Public Defender, attorney
 for appellant (Yesmin Diaz, Designated
 Counsel, on the brief).

 Christopher S. Porrino, Attorney General,
 attorney for respondent (Andrea M. Silkowitz,
 Assistant Attorney General, of counsel; Sara
 M. Gregory, Deputy Attorney General, on the
 brief).
 Joseph E. Krakora, Public Defender, Law
 Guardian, attorney for minor (Lisa M. Black,
 Designated Counsel, on the brief).

 The opinion of the court was delivered by

SUTER, J.A.D.

 Defendant E.R. (Erica) appeals the July 16, 2014 order of the

Family Division that found, pursuant to N.J.S.A. 9:6-8.21(c), she

abused or neglected her child, L.C. (Lee).1 We affirm the court's

order. There was sufficient credible evidence that Erica's drug

use harmed her infant child, who suffered withdrawal symptoms upon

birth, requiring seven weeks of hospitalization.

 Lee was born on August 17, 2013. Within a day, he tested

positive for opiates and cocaine. His mother, Erica, also tested

positive for the same substances. Erica admitted using cocaine

and Vicodin purchased on the streets of Jersey City two days prior

to Lee's birth. She admitted to the Division of Child Protection

and Permanency (DCPP) caseworker that she had been using cocaine

and heroin on and off for the past six years and moved to Florida

to attend a drug rehabilitation clinic. She was not able to remain

drug free. After she learned she was in her fifteenth week of

1
 Fictitious names have been used throughout the opinion to
maintain the confidentiality of the parties.

 2 A-5778-14T4
pregnancy, Erica claimed to have stopped using drugs and started

taking prenatal vitamins.

 DCPP's complaint filed under Title Nine, N.J.S.A. 9:1-1 to -

25, against Erica2 alleged that her illegal drug use harmed Lee

because he was born positive for opiates and suffered withdrawal

symptoms requiring hospitalization. DCPP was granted care,

custody and supervision of Lee in September 2013 while the child

was still in the hospital.

 A fact-finding hearing was held before Family Division Judge

Lois Lipton on DCPP's claim that Lee was abused or neglected by

Erica. Witnesses for DCPP testified that it was notified shortly

after Lee was born that both the child and mother had tested

positive for cocaine and opiates. Witnesses detailed DCPP's

subsequent investigation. The child's treating physician at the

hospital, Dr. Editha Ansay, a neonatologist, testified at the

hearing as an expert witness in the field of pediatrics. She

testified that she diagnosed Lee with Neonatal Abstinence Syndrome

(NAS)3, which meant he was suffering from drug withdrawal. She

2
 The child's father was also included in the complaint but is not
part of this appeal.
3
 NAS is defined as "[a]ny of the adverse consequences in the
newborn of exposure to addictive or dangerous intoxicants during
fetal development." N.J. Div. of Child Prot. & Permanency v.
Y.N., 220 N.J. 165, 170 n.5 (2014) (alteration in original)
(quoting Taber's Cyclopedic Med. Dictionary 1158 (22d ed. 2013).

 3 A-5778-14T4
testified that his diagnosis was based on her personal observations

of Lee during his hospitalization, testing, and Erica's history

of drug use. The symptoms of NAS were "irritability, poor feeding,

increased muscle tone, vomiting, poor weight gain," "excessive,

uncoordinated sucking" and "diarrhea." She testified that within

two days of his birth, Lee exhibited "excessive[,] uncoordinated

sucking," and that "he was irritable, jittery," and "had increased

muscle tone." These symptoms of withdrawal were present "through

the whole seven weeks of his hospitalization." He was treated

with morphine sulfate to counteract the symptoms. Dr. Ansay

testified she personally recalled the "Lipsitz Scoring System"

being administered to Lee, although that part of the hospital

records was not produced at the hearing. She testified Lee's

score on that test was seven or above on three occasions, meaning

that he was experiencing NAS. The doctor also testified that

Erica's toxicology screening tested positive for opiates and

cocaine after Lee's birth. Dr. Ansay's practice group treated Lee

while he was in the hospital; she treated him for three of the

seven weeks.

 On July 16, 2014, Judge Lipton entered an order, finding that

Erica had abused or neglected Lee within the meaning of N.J.S.A.

9:6-8.21(c)(4). All of the witnesses were found to be credible.

The court found Dr. Ansay to be "extremely credible." Based on

 4 A-5778-14T4
all the evidence, the court found that Lee was positive for opiates

and cocaine at his birth, as was Erica, and that he suffered from

NAS, requiring his hospitalization for seven weeks and treatment

with morphine. Judge Lipton found the child "suffered from those

distressing symptoms and as a result was required to be given

further medication for the withdrawal symptoms and spend the first

[seven] weeks of his little life in the hospital . . . based on

his mother's use of [CDS] during the pregnancy . . .," which was

caused by "his mother's negligence."4

 On appeal, Erica contends there was inadequate evidence to

support the court's abuse and neglect finding, that the court

misapplied applicable case law, and that the court relied on

inadmissible evidence.

 We generally defer to fact-finding made by our Family Part

judges because of their "special jurisdiction and expertise in

family matters . . . ." Cesare v. Cesare, 154 N.J. 394, 413

(1998); see also N.J. Div. of Child Prot. & Permanency. v. S.G.,

448 N.J. Super. 135, 143 (App. Div. 2016). They have "the

opportunity to make first-hand credibility judgments about the

witnesses who appear on the stand; [and have] a feel of the case

4
 The litigation was terminated in July 2015 and this appeal
followed. The record reflects that Erica surrendered her parental
rights to the maternal grandmother.

 5 A-5778-14T4
that can never be realized by a review of the cold record." N.J.

Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 342-43

(2010) (quoting N.J. Div. of Youth and Family Servs. v. E.P., 196

N.J. 88, 104 (2008)). Fact-finding that is supported by

sufficient, substantial and credible evidence in the record is

upheld. See N.J. Div. of Youth & Family Servs. v. L.L., 201 N.J.

210, 226 (2010); N.J. Div. of Child Prot. & Permanancy v. J.D.,

447 N.J. Super 337, 350-51 (2016). However, the court's

interpretation of the law or its legal conclusions are reviewed

de novo. See State in Interest of A.B., 219 N.J. 542, 554-55

(2014) (citations omitted).

 Title Nine defines an "[a]bused or neglected child" as:

 [A] child less than 18 years of age whose
 parent or guardian . . . inflicts or allows
 to be inflicted upon such child physical
 injury by other than accidental means which
 causes or creates a substantial risk of death,
 or serious or protracted disfigurement, or
 protracted impairment of physical or emotional
 health or protracted loss or impairment of the
 function of any bodily organ . . . .

 [N.J.S.A. 9:6-8.21(c)(1).]

 Under Title Nine, the question is whether the child "'ha[s]

been impaired' or [is] in 'imminent danger of becoming impaired'

[because] of his [parent's] failure to exercise a minimum degree

of care by unreasonably inflicting harm or allowing a 'substantial

risk' of harm to be inflicted." N.J. Dep't of Children & Families,

 6 A-5778-14T4
Div. of Youth & Family Servs. v. A.L., 213 N.J. 1, 22 (2013).

"[E]vidence of actual impairment to the child will satisfy the

statute . . . ." Ibid. The Court in A.L. observed "proof that a

child is suffering from withdrawal symptoms at birth could

establish actual harm." Ibid. In the absence of "actual harm,"

abuse or neglect under the statute can be shown by proof of

"imminent danger or a substantial risk of harm to a child by a

preponderance of the evidence." Dep't of Children & Families,

Div. of Child Prot. & Permanency v. E.D.-O., 223 N.J. 166, 178

(2015)(emphasis omitted) (quoting A.L., supra, 213 N.J. at 22).

 In A.L., supra, the Court clarified that in a Title Nine

case, "[t]he proper focus is on the risk of substantial, imminent

harm to the child, not on the past use of drugs alone." 213 N.J.

at 23. "If an expectant mother's drug use causes actual harm to

the physical, mental, or emotional condition of a newborn child,

a finding of abuse or neglect is appropriate[,]" but otherwise

"the statute requires a showing of 'imminent danger' or a

'substantial risk' of harm." Id. at 8 (citation omitted). In

A.L., there was no proof the child was actually harmed by mother's

drug use.

 In Y.N., supra, 220 N.J. at 181, the Court clarified that

Title Nine was "not a strict liability statute." Courts must

consider "the reasonableness of the parent's conduct." Ibid. In

 7 A-5778-14T4
Y.N., the Court did not find abuse or neglect under Title Nine

where the newborn "suffered neonatal abstinence syndrome as a

result of [the child's mother's] participation in a medically

prescribed methadone maintenance treatment program." Id. at 183.

 This is not the case here. Judge Lipton's finding of abuse

or neglect was consistent with the standard set forth in A.L. She

found that Lee tested positive for opiates and cocaine as a result

of Erica using drugs during her pregnancy, which caused Lee to

suffer withdrawal symptoms and require hospitalization for seven

weeks. There was no evidence that Erica was in a treatment program

when Lee was born. This is the type of actual harm cited in A.L.

that fits the definition of abuse or neglect under Title Nine. We

discern no error in the court's order or analysis, which was amply

supported by the record.

 We briefly address the evidentiary issues raised in the

appeal. "Evidentiary decisions are reviewed under the abuse of

discretion standard because, from its genesis, the decision to

admit or exclude evidence is one firmly entrusted to the trial

court's discretion." Estate of Hanges v. Metro. Prop. & Cas. Ins.

Co., 202 N.J. 369, 383-84 (2010) (citations omitted) (citing Green

v. N.J. Mfrs. Ins. Co., 160 N.J. 480, 492 (1999)). We reject the

argument that Dr. Ansay's testimony was a net opinion. Her

testimony was based in part on her personal observation. See

 8 A-5778-14T4
Townsend v. Pierre, 221 N.J. 36, 53 (2015) (holding that N.J.R.E.

703 requires that an expert's opinion be based on, among other

things, "facts or data derived from (1) the expert's personal

observations . . . ."). She testified Lee's diagnosis was based

on testing, observation of the child and the mother's history of

drug use. This provided the "why and wherefore" that supported

her opinion.

 As for the hospital records, Dr. Ansay's testimony

established the records as business records under N.J.R.E.

803(c)(6). Although incomplete, their admission did not

constitute reversible error because Dr. Ansay's testimony

independently supported the Family Division's order, finding abuse

or neglect.

 Affirmed.

 9 A-5778-14T4