# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0162-20

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

P.H. and FATHER OF N.H.,
whomsoever he may be,

     Defendants,

and

R.H.,

     Defendant-Appellant.

_____

IN THE MATTER OF R.H., N.H.,
and R.H., minors.

_____

Submitted December 1, 2021 – Decided February 1, 2022

Before Judges Gilson and Gummer.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FN-07-0278-19.

Joseph E. Krakora, Public Defender, attorney for appellant (Kimberly A. Burke, Designated Counsel, on the brief).

Andrew J. Bruck, Acting Attorney General, attorney for respondent (Donna Arons, Assistant Attorney General, of counsel; Julie B. Colonna, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Margo Hirsch, Designated Counsel, on the brief).

PER CURIAM

In this Title Nine case, defendant R.H. (Rhys) appeals from an October 24, 2019 order finding he abused or neglected three minor children, R.H. (Richard), N.H. (Nancy), and R.H. (Rita), and an August 3, 2020 order ending the case.[1] Rhys argues the Family Part judge erred in finding Richard's out-of-court abuse allegations were corroborated and in not giving sufficient weight to other evidence. Because Richard's allegations were corroborated and sufficient credible evidence supported the judge's findings, we affirm.

---

[1] We use initials and fictitious names for the parents and children to protect their privacy and the confidentiality of the record. See R. 1:38-3(d)(12).

I.

The facts and evidence are detailed in Judge Nora J. Grimbergen's comprehensive opinion, which she rendered after a one-day fact-finding hearing. We summarize the relevant facts from the record. Co-defendant P.H. (Pam) is the biological mother of Richard, Nancy, and Rita, who, respectively, were thirteen-years, three-years, and eleven-months old, at the time of the April 9, 2019 incident at issue in this case. Judge Grimbergen found Pam had not abused or neglected her children. She has not participated in this appeal. Rhys is the biological father of Richard and Rita.

As the judge found, Rhys and Pam "have a lengthy violent history." The Division of Child Protection and Permanency (the Division) became involved with the family on February 12, 2019, when Pam's sister reported concern for the children based on Rhys's physical abuse of Pam. In a meeting with Division investigator Manuel Figueroa, Pam denied her sister's allegation of recent domestic violence but acknowledged Rhys had been violent with her in the past, including holding her hostage at gunpoint in 2008. According to Pam, Rhys was imprisoned for two years for that crime. Pam stated Rhys did not live with them but visited only on the weekends to see Richard. Pam claimed Rhys suffered

 A-0162-20

from paranoia due to post-traumatic stress disorder (PTSD). Rhys confirmed with Figueroa he had been diagnosed with PTSD and bipolar disorder.

While the Division's investigation of that referral was ongoing, it received a report on March 27, 2019, from the Essex County Family Court Domestic Violence Unit, advising Pam had been granted a temporary restraining order (TRO) against Rhys based on allegations that on March 24, 2019, he had threatened to shoot her and the children. The Unit also informed the Division Pam was seeking a final restraining order (FRO), asserting, among other things, Rhys had threatened to kill the children in 2018. Figueroa again met with Pam. She described the March 24 incident to him, stating Rhys had threatened to kill her and the children. Figueroa also spoke with Richard, who confirmed Rhys had threatened to kill everyone in the home.

Rhys was arrested and jailed because of the March 24 incident and subsequently released on March 26. A final hearing on Pam's FRO application was scheduled to take place on April 11.

On April 11, 2019, Pam filed an incident report with the Newark Police Department, alleging that on April 9, 2019, Rhys attempted to stab Richard. Pam was interviewed by Police Officer Duane Martinez. The police reported the incident to the Division. On April 12, 2019, Figueroa interviewed Pam and

4

Richard. Pam recounted the incident she had described to the police. After Pam had accepted a call from Rhys, met him outside the home, and permitted him to enter the home, contrary to the TRO, Rhys questioned her about her whereabouts on his birthday, grabbed a kitchen knife, went into the room where Richard was sleeping, and questioned him about Pam's whereabouts. After Richard answered, Rhys attempted to stab him multiple times. Richard was able to move out of the way to avoid being stabbed, resulting in Rhys stabbing the mattress instead. When Pam attempted to intercede, Rhys punched her, dragged her across the floor, and kicked her multiple times. Rhys gathered everyone in Pam's bedroom and asked Richard why he had removed pictures of Rhys from his Instagram account. After Richard responded, Rhys punched his face, punched Nancy in the face, and pushed her against the closet door. Pam was not able to call the police during the incident because Rhys had taken her and Richard's cell phones. After about two hours, Rhys left the house.

Richard told Figueroa he was napping when Rhys woke him up, asking about Pam's whereabouts on his birthday. Rhys then "jumped at him and tried to stab him multiple times," but Richard "lunged backwards and avoided the knife." Pam "jumped on [Rhys] while he was stabbing the bed which led to [Rhys] hitting her on the head with the butt of the knife, dragging her by her hair

5

and kicking her."  Richard confirmed Rhys had punched him after questioning him about his Instagram account and had punched Nancy.  He also stated Rhys had taken their phones, would not let them leave, and made multiple threats to kill Pam if she called the police.

On April 16, 2019, the Division filed an order to show cause, asking the family court to place the children in the Division's care and supervision.  Judge Grimbergen granted the application, finding the Division had made a prima facie showing of abuse and neglect.  The judge cited Rhys's "significant mental health issues," defendants' "long-standing history of domestic violence," the April 9 incident, and the Division's concern about Pam's ability to protect the children.

On May 6, 2019, Pam and Rhys appeared in court for the FRO hearing. Figueroa was present at the hearing.  The family court granted Pam's application and issued the FRO.  On September 24, 2019, Pam dismissed the FRO because "I no longer feel like I'm in danger," "he is my children's' father," and "I'm basically just over this whole case."

Judge Grimbergen conducted a fact-finding hearing on October 24, 2019. The Division presented testimony from Martinez and Figueroa and submitted numerous exhibits into evidence.  Defendants did not testify or present any witnesses or other evidence.

A-0162-20

Martinez authenticated the police report, and it was admitted into evidence, subject to the court deciding Rhys's counsel's objection to Pam's statements contained in the report as inadmissible hearsay. Martinez testified he was "familiar" with the family because he had responded to Pam's house multiple times due to domestic-violence incidents, most recently on April 11, 2019, in connection with the April 9 incident. Martinez gave his recollection of what Pam had told him about the incident, including that she had said Rhys had attempted to stab Richard multiple times and had grabbed and thrown Nancy into a closet door. Without objection, he also testified as to what Richard had told him: "his father attempted to stab him" and "he rolled on the bed multiple times and the father punctured the bed." Martinez, who had gone to the house, described the bed as having a fitted comforter with puncture holes looking "like slits into the bed." After removing the comforter from the bed, he could "see the holes inside the mattress as well."

The police had photographed the bed and the closet door. Over defense counsel's objection, the judge admitted the photograph of the bed into evidence but gave it no weight, stating she could not decipher what it depicted. The judge also admitted the police's photograph of the closet door.

A-0162-20

Before Figueroa testified, defense counsel objected to the admission of Richard's statements contained in the Division's investigation summaries, arguing the statements were "inadmissible hearsay unless they are corroborated" pursuant to N.J.S.A. 9:6-8.46(a)(4), and reserved the right to argue the issue in closing arguments. Defense counsel also objected to the admission of Pam's out-of-court statements and statements she and Rhys had made during the FRO hearing as memorialized or overheard by Figueroa. The Division's attorney argued Pam's and Rhys's statements were admissible against each other under N.J.R.E. 803(b) as statements by a party-opponent and under N.J.S.A. 803(c)(25) as statements against interest. Judge Grimbergen ruled statements made by Pam or Rhys to Figueroa were admissible under both rules. When asked by Rhys's counsel for clarification as to which defendants the statements were admissible, the judge stated "both," analogizing defendants' situation as party opponents to co-conspirators in a criminal matter. The trial court held Figueroa could not testify about the statements he had heard Pam and Rhys make during the FRO hearing.

Figueroa testified about the Division's involvement with the family, its investigation, and its findings. He repeated the statements Pam, Rhys, and Richard had made to him, consistent with what he had written in his reports. He

also stated that after the April 9 incident, Pam had told him her denial of domestic violence in connection with the February 12 referral was not true and had said Rhys on that occasion had "punched her in the arm several times" and "had been assaulting her throughout . . . the course of the investigation."

During her closing argument, Rhys's counsel again asserted Richard's statements to Figueroa had not been corroborated pursuant to N.J.S.A. 9:6-8.46(a)(4). She argued the children had "suffered no proven injuries," the photograph of the bed had been admitted but already had been given no weight, the photograph of the closet door was admitted but should be given no weight, and Pam's statements should be given little weight because "they were very possibly made on her own self-interest at the time." She also argued that, if admitted, Richard's statements should be given little weight because "there was ample time between the events and the interviews for [Richard's] statements to have been influenced by outside persons or other parties." She also contended Richard's statements about Rhys attempting to stab him where "incongruent" with Richard's stated desire to remain in contact with Rhys.

In a decision placed on the record, Judge Grimbergen found Figueroa and Martinez to be credible. The judge held that under N.J.S.A. 9:6-8.46(a)(4), Richard's out-of-court statements were admissible because they were

"sufficiently and adequately and almost overwhelmingly corroborated by [Pam's] account of the incidents" and "were consistent and corroborate each other." After reviewing the facts, the judge found Rhys's history of aggressive behavior; his actions leading to the issuance of an FRO; and his actions during the April 9 incident in which Rhys had attempted to stab Richard multiple times and physically abused Pam, Richard, and Nancy place the children at "severe risk of harm." Judge Grimbergen found by a preponderance of the evidence Rhys had abused or neglected the children pursuant to N.J.S.A. 9:6-8.21(c). The judge found the Division had not proved Pam's actions were grossly negligent.

The judge memorialized her findings in a written order, concluding Rhys has abused or neglected the children in that he:

> harmed and placed at risk of harm the children . . . . [Rhys] has a long-standing history of domestic violence with [Pam], had a pattern of escalating violent behaviors in the home starting in February 2019, violated a restraining order issued on March 27, 2019, and physically assaulted [Pam, Nancy, and Richard] in an incident involving a weapon.

Defendant appeals, arguing:

> THE TRIAL COURT'S DETERMINATION THAT DCPP HAD ESTABLISHED THE "IMMINENT DANGER" AND "SUBSTANTIAL RISK" ELEMENTS REQUIRED IN THIS CASE FOR AN ABUSE AND NEGLECT JUDGMENT UNDER N.J.S.A. 9:6-8.21(c)(4)(b) WAS LEGALLY

10

UNSUPPORTABLE ON THE EVIDENCE PRESENTED, AND THIS COURT MUST REVERSE THAT JUDGMENT AS THE PRODUCT OF ERROR IN THE APPLICATION OF THE STATUTE.

I. THE CHILD'S ALLEGATIONS OF ABUSE WERE NOT CORROBORATED AS REQUIRED BY N.J.S.A. 9:6-8.46(a)(4) AND THEREFORE CANNOT SUPPORT THE TRIAL COURT'S LEGAL CONCLUSION THAT [RHYS] ABUSED OR NEGLECTED HIS CHILDREN.

II. EVEN IF THE TRIAL COURT WERE CORRECT IN ITS APPLICATION OF THE LAW REGARDING CORROBORATING EVIDENCE, THE TRIAL COURT ERRED IN THE IMPLICATIONS IT DREW FROM THE EVIDENCE AS A WHOLE, DISREGARDING SIGNIFICANT EVIDENCE THAT DID NOT CORROBORATE THE ALLEGATIONS.

II.

Our review of family-court decisions is "strictly limited." N.J. Div. of Youth & Fam. Servs. v. I.H.C., 415 N.J. Super. 551, 577 (App. Div. 2010). "[W]e apply a deferential standard in reviewing the family court's findings of fact because of its superior position to judge the credibility of witnesses and weigh the evidence," N.J. Div. of Child Prot. & Permanency v. J.R.-R., 248 N.J. 353, 368 (2021), and "because it possesses special expertise in matters related to the family," N.J. Div. of Youth & Fam. Servs. v. F.M., 211 N.J. 420, 448

11

(2012). Thus, we are bound to accept the trial court's factual findings as long as they are supported by sufficient credible evidence. N.J. Div. of Child Prot. & Permanency v. A.D., 455 N.J. Super. 144, 155 (App. Div. 2018); see also N.J. Div. of Youth & Fam. Servs. v. G.L., 191 N.J. 596, 605 (2007) (holding a trial court's findings are entitled to deference "unless it is determined that they went so wide of the mark that the judge was clearly mistaken"). We owe no deference to a judge's legal conclusions. N.J. Div. of Youth & Fam. Servs. v. R.G., 217 N.J. 527, 552 (2014).

"We defer to a trial court's evidentiary ruling absent an abuse of discretion." State v. Garcia, 245 N.J. 412, 430 (2021). Given that deferential standard, we overturn a trial court's evidentiary ruling "only for a 'clear error in judgment.'" State v. Medina, 242 N.J. 397, 412 (2020) (quoting State v. Scott, 229 N.J. 469, 479 (2017)). However, we review an evidentiary decision de novo if the trial court applied the wrong legal standard in deciding to admit or exclude the evidence. State v. Trinidad, 241 N.J. 425, 448 (2020).

## A.

As our Supreme Court recently summarized in J.R.-R., 248 N.J. at 368:

> New Jersey's child-welfare laws balance "two competing interests: a parent's constitutionally protected right 'to raise a child and maintain a relationship with that child, without undue interference

by the [S]tate,' and 'the State's parens patriae responsibility to protect the welfare of children.'" [N.J. Dep't of Child. & Fams., Div. of Youth & Fam. Servs.] v. A.L., 213 N.J. 1, 18 (2013) (citations omitted). Title Nine "outlines the standards for abuse and neglect proceedings against parents and guardians." Ibid. The clear purpose of Title Nine is to protect children "who have had serious injury inflicted upon them" and to ensure that they "are immediately safeguarded from further injury and possible death." N.J.S.A. 9:6-8.8(a); see also A.L., 213 N.J. at 18. To that end, Title Nine provides for the civil prosecution of a parent or guardian who abuses or neglects a child. N.J.S.A. 9:6-8.33.

"The prevailing concern in abuse and neglect cases is the best interests of the child." N.J. Div. of Child Prot. & Permanency v. S.G., 448 N.J. Super. 135, 146 (App. Div. 2016); see also N.J.S.A. 9:6-8.8(a) (under Title Nine, children's safety is "of paramount concern and the best interests of the child shall be a primary consideration"). "Abuse and neglect cases are generally fact sensitive" and require "careful, individual scrutiny." N.J. Div. of Youth & Fam. Servs. v. P.W.R., 205 N.J. 17, 33 (2011). "An analysis of a parent's conduct must account for the surrounding circumstances." Dep't of Child. & Fams., Div. of Child Prot. & Permanency v. E.D.-O., 223 N.J. 166, 180 (2015).

An abused or neglected child is one:

> whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or

13

guardian . . . to exercise a minimum degree of care . . . (b) in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof, . . . .

[N.J.S.A. 9:6-8.21(c)(4)(b).]

See also J.R.-R., 248 N.J. at 369. The Division has the burden of proving by a preponderance of the evidence a parent abused or neglected a child. J.R.-R., 248 N.J. at 359. The Division must sustain that burden through the admission of "competent, material and relevant evidence." Ibid. (quoting N.J.S.A. 9:6-8.46(b)).

"Whether a parent or guardian has failed to exercise a minimum degree of care is to be analyzed in light of the dangers and risks associated with the situation." G.S. v. Dep't of Hum. Servs., 157 N.J. 161, 181-82 (1999). "A parent who fails 'to exercise a minimum degree of care' by unreasonably allowing harm to be inflicted on a child is accountable under the statute." J.R.-R., 248 N.J. at 370 (quoting N.J.S.A. 9:6-8.21(c)(4)). A "'minimum degree of care' refers to conduct that is grossly or wantonly negligent . . . ." G.S., 157 N.J. at 178; see also Dep't Child. & Fams., Div. of Youth & Fam. Servs. v. T.B. 207 N.J. 294, 305 (2011).

A court must determine "the parent's level of culpability." T.B., 207 N.J. at 307.

> [W]here a parent or guardian acts in a grossly negligent or reckless manner, that deviation from the standard of care may support an inference that the child is subject to future danger. To the contrary, where a parent is merely negligent there is no warrant to infer that the child will be at future risk.
>
> [Ibid.]

"That assessment must consist of a particularized review of a parent's or caretaker's actions and the impact of any act or omission on the child." E.D.-O, 223 N.J. at 180. In determining whether a parent's conduct amounted to gross negligence, courts consider whether "'an ordinary reasonable person' would understand the perilous situation in which the child was placed." N.J. Div. of Youth & Fam. Servs. v. A.R., 419 N.J. Super. 538, 546 (App. Div. 2011); see also T.B., 207 N.J. at 308.

### B.

In Title Nine proceedings, a child's hearsay statements "relating to any allegations of abuse or neglect shall be admissible in evidence; provided, however, that no such statement, if uncorroborated, shall be sufficient to make a fact finding of abuse or neglect." N.J.S.A. 9:6-8.46(a)(4); see also N.J. Div. of Child Prot. & Permanency v. S.K., 456 N.J. Super. 245, 272 (App. Div. 2018). The statute "constitutes a statutorily created exception to the hearsay rule but independent evidence of corroboration is required in order to find abuse or

neglect." N.J. Div. of Child Prot. & Permanency v. N.B., 452 N.J. Super. 513, 522 (App. Div. 2017). We review de novo a court's determination a child's hearsay statements have been sufficiently corroborated under N.J.S.A. 9:6-8.46(a)(4). N.J. Div. of Child Prot. & Permanency v. A.D., 455 N.J. Super. 144, 156 (App. Div. 2018).

"The most effective types of corroborative evidence may be eyewitness testimony, a confession, an admission or medical or scientific evidence." Id. at 157 (quoting N.J. Div. of Youth & Fam. Servs. v. L.A., 357 N.J. Super. 155, 166 (App. Div. 2003)). However, a "child's statement need only be corroborated by '[s]ome direct or circumstantial evidence beyond the child's statement itself.'" Ibid. (alteration in original) (quoting N.B., 452 N.J. Super. at 522). Corroborative evidence must "'only provide support' for the child's statements," ibid. (quoting N.B., 452 N.J. Super. at 521), and need not be "'offender-specific,' because '[i]t would be a rare case where evidence could be produced that would directly corroborate the specific allegation of abuse between the child and the perpetrator,'" ibid. (alteration in original) (quoting N.J. Div. of Youth & Fam. Servs. v. Z.P.R., 351 N.J. Super. 427, 435 (App. Div. 2002)). Corroborative evidence may be circumstantial, but it "must be independently admissible for a court to deem it corroborative of a child's statement." Ibid.

A-0162-20

Rhys argues Pam's statements could not be used to corroborate Richard's statements because, contrary to the judge's finding, Pam's statements were inadmissible hearsay and did not fall under the hearsay exceptions set forth in N.J.R.E 803(b) or N.J.R.E. 803(c)(25). Rhys contends Pam's statements could not be viewed as statements against interest under N.J.R.E 803(c)(25) because "arguably, Pam was advocating for herself, making statements in her own interest, to the police and [the Division] . . . because she wanted their assistance."

We addressed that issue directly in New Jersey Division of Child Protection & Permanency v. N.T., 445 N.J. Super. 478 (App. Div. 2016), a case Rhys did not cite in his brief. In that Title Nine case, we found no abuse of discretion in the family court's finding that a co-defendant mother's statement regarding lying to the Division "when she claimed there was no current domestic violence," "[h]er statements detailing the domestic violence," and her "statements that the children had witnessed the domestic violence," contained in a Division caseworker's report, were statements against interest admissible under N.J.S.A. 803(c)(25). N.T., 445 N.J. Super. at 498-99. We concluded her statement about lying to the Division was a direct statement against interest and the other statements were indirectly against her interest because they "could help

prove that she had lied to the Division" and help prove "an allegation by the Division that [she] abused or neglected the children by allowing them to be exposed to domestic violence." Ibid. We acknowledged her statements also could be viewed as "serving her interests, as they directly accused [the stepfather] of committing domestic violence against [her] in front of the children" and given the pending divorce proceedings. Id. at 499. Because "no rule [exists] that . . . denies admission of the statement because it is a mixture of exculpatory and incriminatory statements," id. at 500 (quoting State v. Weaver, 219 N.J. 131, 158-59 (2014)), and because whether a statement was "possibly tainted by an impure motive bears only on its value," id. at 499 (quoting State v. Abrams, 140 N.J. Super. 232, 236 (App. Div. 1976), aff'd o.b., 72 N.J. 342 (1977)), we concluded the "admissibility of statements against interest raises 'questions addressed in the first instance to the trial court's sound discretion,'" id. at 500 (quoting State v. Nevius, 426 N.J. Super. 379, 392 (App. Div. 2012)). We saw no abuse of discretion in the family court's admission under N.J.R.E. 803(c)(25) of the mother's statements against the defendant stepfather. Ibid. Her statements in turn corroborated the child's statements contained in the Division caseworker's report. Ibid.

18

We reach the same result here. Like the co-defendant mother in N.T., Pam was not only a witness to the events but a defendant in the litigation, having literally opened the door to the abuse that occurred on April 9, 2019, in direct contravention of the TRO. Her statements made the Division's case against both defendants stronger. See State v. White, 158 N.J. 230, 244 (1999) (finding statements indirectly incriminating the declarant are admissible as statements against interest if, "as a related part of a self-inculpatory statement, they strengthen or bolster the incriminatory effect"). N.J.R.E. 803(c)(25) does not limit the use of a statement against interest to the case against the declarant. See Rowe v. Bell & Gossett Co., 239 N.J. 531, 559 (2019) (finding "[t]he declarant . . . need not be a party to the action in which the statement is admitted"). We discern no abuse of discretion or misapplication of the law in Judge Grimbergen's decision to admit Pam's statements pursuant to N.J.R.E. 803(c)(25) and consider them in deciding the Division's case against Rhys. Given the admissibility of Pam's statements under N.J.R.E 803(c)(25), we need not address Rhys's argument regarding admissibility under N.J.R.E. 803(b).

Richard's statements were, as Judge Grimbergen found, "sufficiently and adequately and almost overwhelmingly corroborated by [Pam's] account of the incidents." Richard's statements about his father attempting to stab him were

also corroborated by Martinez's testimony concerning his first-hand observation of the puncture holes in the comforter and mattress. We discern no abuse of discretion in Judge Grimbergen's admission of Richard's statements pursuant to N.J.S.A. 9:6-8.46(a)(4).

## C.

Rhys faults the judge for not giving sufficient weight to other evidence, like Richard's desire to have contact with his father and Pam's later dismissal of the FRO. The judge was free to give whatever weight, if any, to the evidence before her as she deemed appropriate. Judge Grimbergen's finding that the Division proved by a preponderance of the evidence Rhys had abused or neglected the children is supported by sufficient credible evidence in the record, and we discern no abuse of discretion in that finding.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0162-20