**RECORD IMPOUNDED**

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-1343-17T1

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

       Plaintiff-Respondent,

v.

V.F.,

       Defendant-Appellant.

_____

IN THE MATTER OF T.Q., A.Q.,
S.F., and VI.F.,

       Minors.

_____

> **APPROVED FOR PUBLICATION**
>
> **January 22, 2019**
>
> **APPELLATE DIVISION**

Argued October 29, 2018 – Decided January 22, 2019

Before Judges Sabatino, Haas and Sumners.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Ocean County, Docket No. FN-15-0061-17.

Christine O. Saginor, Designated Counsel, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney; Christine O. Saginor, of counsel and on the briefs).

Francis A. Raso, Deputy Attorney General, argued the cause for respondent (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Francis A. Raso, on the brief).

Olivia B. Crisp, Assistant Deputy Public Defender, argued the cause for minors T.Q. and A.Q. (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Olivia B. Crisp, on the brief).

Danielle Ruiz, Designated Counsel, argued the cause for minors S.F. and Vi.F. (Joseph E. Krakora, Public Defender, Law Guardian, attorney; Danielle Ruiz, on the brief).

The opinion of the court was delivered by

SUMNERS, J.A.D.

Defendant V.F.[1] appeals the Family Part's order that he abused or neglected his minor children within the meaning of Title 9, N.J.S.A. 9:6-8.21 to -8.73. The New Jersey Division of Child Protection and Permanency (the Division) and the Law Guardians urge us to affirm. We conclude that based upon a logical extension of our ruling in State v. Doriguzzi, 334 N.J. Super. 530, 536 (App. Div. 2000), the trial court should not have considered the police officer's testimony that defendant was under the influence based upon

---

[1] We use initials and fictitious names to identify the parties to protect and preserve their confidentiality. R. 1:38-3(d)(12).

the results of a horizontal gaze nystagmus (HGN) test, which has not been shown to be generally accepted as being scientifically reliable. However, we conclude the order was consistent with the law because it was supported by substantial independent credible evidence that defendant was under the influence and that his conduct created a substantial risk to the children's mental health and physical safety. Therefore, we affirm.

I.

The facts developed at the Title 9 fact-finding hearing are summarized as follows. On September 20, 2016, T.Q. (Trent), twelve-years old, called his maternal grandmother, because he was unable to wake his mother R.H. (Rina) at their Jackson Township home. At home with Trent were defendant, A.Q. (Abby), ten-years old, S.F. (Skylar), eight-years old, and Vi.F. (Von), four-days old. Defendant is the biological father of Skylar and Von. Rina is the mother of all four children, and gave birth to Von through a Caesarean section. Upon arriving at the house, the grandmother found Rina unresponsive and called the police.

When police officers Andrea Falzarano, Chris Kelly, and Greg Schmidt arrived at the house shortly after 4:30 p.m., they found Rina unresponsive; partially lying on a mattress and on the floor. Officer Falzarano testified he saw defendant kneeling on the mattress, hunched over next to Rina. He asked

defendant if he knew what Rina was on, whether she took anything, or if she was in any kind of pain. He repeated these questions three times, until defendant eventually responded, "I don't know." Officer Falzarano noticed that defendant was moving very slow, had slurred speech, droopy eyes, and grasped the wall and stumbled while trying to stand.

Defendant unsuccessfully tried to wake Rina. Officer Schmidt then unsuccessfully tried to wake her by administering a sternum rub. First aid responders arrived moments later, and they unsuccessfully attempted to wake Rina by giving her a dose of Narcan, to counteract the effect of any narcotic she may have taken. Rina was taken to a local hospital where she was eventually revived.

The officers did not search the residence and did not see any drugs in plain view. The grandmother gave Officer Falzarano a bottle of oxycodone, which was prescribed to Rina upon her release from the hospital. However, he could not remember how many pills were in the bottle, but believed it was a sixty count, and that ten to fifteen were missing. He described Trent to be "very torn, very distraught, crying[,] . . . shaking, [and] a little red in the face." Officer Falzarano left the children in the grandmother's care and called the Division.

When the Division's special response workers, Melissa Gambardella and Jennifer Lavundi, arrived at the house to investigate the matter, the grandmother was there with the children, but defendant had left the house. Five to ten minutes later, defendant returned. Gambardella testified that defendant seemed to be under the influence because his eyes were red and his speech was slurred. Officer Falzarano returned to the house to meet the Division workers. Defendant denied being under the influence, but consented to Officer Falzarano's request to administer the HGN test.[2] After conducting the test, the officer concluded, based on his training and experience, defendant was under the influence of an unknown substance.

---

[2]

> The HGN test is based on the observation of three different physical manifestations[,] which occur when a person is under the influence of alcohol: (1) the inability of a person to follow, visually, in a smooth way, an object that is moved laterally in front of the person's eyes; (2) the inability to retain focus and the likelihood of jerking of the eyeball when a person has moved his or her eye to the extreme range of peripheral vision; and (3) the reported observation that this "jerking" of the eyeball begins before the eye has moved 45 degrees from forward gaze if the individual's BAC [(Blood Alcohol Content)] is .10 [percent] or higher.
>
> [Doriguzzi, 334 N.J. Super. at 536 (citing State v. Ito, 978 P.2d 191, 197 (Haw. Ct. App. 1999)).]

According to Gambardella, she spoke with defendant, and his responses were "choppy" and his recollection of the incident was inconsistent. Gambardella stated that Lavundi, who did not testify,[3] interviewed the children, who were extremely worried about their mother and denied that there was any ongoing alcohol or drug use by their mother or defendant. Trent told Lavundi that his mother had been sitting on the couch unresponsive, when he dragged the mattress from his bedroom into the living room, and he and Abby dragged their mother onto the mattress. Trent also stated that at that point, his dad woke up, tried to wake up his mom, but fell asleep right next to her. Gambardella inspected the oxycodone pills that were prescribed to Rina on September 19, and, contrary to Officer Falzarano's estimate, counted at least twenty to twenty-five pills of the thirty-count prescription remaining.

The Division workers left the house and went to see Rina at the hospital. When they arrived, she was conscious, but incoherent and unable to speak. The Division then conducted an emergency removal of the children because defendant was under the influence and Rina was hospitalized with an uncertain release date.

The next day, the Division's Amber Belsky went to the hospital to check on Rina. She testified that Rina could not remember what happened the day

---

[3] Lavundi's report was admitted into evidence without objection.

before, but knew that she took oxycodone as prescribed, took Motrin, and smoked synthetic marijuana, K2, with defendant at five p.m. However, Rina could not have smoked K2 at that time because the police arrived at the house around 4:30 p.m. to find her unconscious. Drug tests taken by the hospital upon her admission revealed that Rina tested positive for opiates, but not for synthetic marijuana.

On September 23, after a court hearing, defendant was served papers notifying him to take a urine screen since he failed to show up, as promised, for his first urine screen on September 21. Defendant and Rina were subsequently charged with abuse or neglect of their children.

Following the Title 9 hearing on January 6, 2017, the trial judge issued an order finding the Division proved the charges against defendant and Rina, and rendered an oral opinion explaining that her decision was based upon the credible testimony of the Division workers and Officer Falzarano, that they were both under the influence and unable to care for their four minor children. Neither defendant nor Rina testified.

The judge found that Officer Falzarano, who was not qualified as an expert, administered the HGN test to confirm his and the Division workers' suspicions that defendant was under the influence of some substance. She rejected defendant's assertion that this court's decision in Doriguzzi, 334 N.J.

Super. at 530, applied to bar evidence of HGN test results in a Title 9 proceeding. In Doriguzzi, we held that the HGN test can be used to establish probable cause to arrest, but it is not sufficiently reliable for admission as proof that the defendant was driving while under the influence (DUI) of alcohol. Id. at 546. The judge accepted Belsky's testimony that Rina admitted that she smoked K2 with defendant. The judge ordered defendant to have a psychological evaluation and comply with all treatment recommendations and temporarily suspended his supervised visitation rights.

In June 2017, as the case was progressing to a termination of parental rights hearing, Rina passed away. Additionally, defendant failed to comply with the court's order to cooperate with urine screens, neglected to make himself available for individual counseling, and was discharged from St. Francis Community Center's family support program for poor attendance at parenting classes. The judge ultimately transferred custody of the four children to J.Q., the biological father of Trent and Abby, and his wife, who live in Indiana.

After the permanency hearing in August 2017, the judge determined it would not be safe to return the children to defendant within the foreseeable future, and the Division satisfied its obligation to provide reasonable efforts toward reunifying the family. Accordingly, the judge accepted the Division's

plan for termination of defendant's parental rights to Skylar and Von. The Division filed a complaint for the termination of defendant's parental rights, and on October 6, the court entered an order terminating litigation. Defendant limits his appeal to the order that he abused or neglected the children.

## II.

To prevail in a Title 9 proceeding, the Division must show by a preponderance of the competent, material, and relevant evidence that the parent or guardian abused or neglected the affected child. N.J.S.A. 9:6-8.46(b). "[T]he Division [is] obligated to present competent evidence adequate to establish that [the child was] presently in imminent danger of being impaired physically, mentally or emotionally." N.J. Div. of Child Prot. & Permanency v. M.C., 435 N.J. Super. 405, 409 (App. Div. 2014) (citing N.J. Dep't of Children and Families v. A.L., 213 N.J. 1, 23, 30 (2013)); see N.J.S.A. 9:6-8.21(c)(4)(b), -8.46(a)(4), (b)(1)-(2). "This includes proof of actual harm or, in the absence of actual harm, 'the Division was obligated to present competent evidence adequate to establish [the child was] presently in imminent danger of being impaired physically, mentally or emotionally.'" N.J. Div. of Youth & Family Servs. v. S.I., 437 N.J. Super. 142, 158 (App. Div. 2014) (citation omitted).

Title 9 provides a child is "[a]bused or neglected" if he or she is one:

whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or guardian . . . to exercise a minimum degree of care (a) in supplying the child with adequate food, clothing, shelter, education, medical or surgical care though financially able to do so or though offered financial or other reasonable means to do so[.]

[N.J.S.A. 9:6-8.21(c)(4).]

The term "'minimum degree of care' refers to conduct that is grossly or wantonly negligent, but not necessarily intentional." G.S. v. Dep't of Human Servs., 157 N.J. 161, 178 (1999) (citing Miller v. Newsweek, 660 F. Supp. 852, 858-59 (D. Del. 1987)). A parent "fails to exercise a minimum degree of care when he or she is aware of the dangers inherent in a situation and fails adequately to supervise the child or recklessly creates a risk of serious injury to that child." Id. at 181. When determining whether a child is abused or neglected, the focus is on the harm to the child, and whether that harm should have been prevented had the guardian performed some act to remedy the situation or remove the danger. Id. at 182.

"Abuse and neglect cases 'are fact-sensitive.'" Dep't of Children & Families, Div. of Child Prot. & Permanency v. E.D.-O., 223 N.J. 166, 180 (2015) (quoting Dep't of Children & Families, Div. of Youth & Family Servs. v. T.B., 207 N.J. 294, 309 (2011)). We give considerable deference to the family court's factual determinations because it has "the opportunity to make

first-hand credibility judgments about the witnesses who appear on the stand . . . [and] a 'feel of the case' that can never be realized by a review of the cold record." N.J. Div. of Youth & Family Servs. v. E.P., 196 N.J. 88, 104 (2008) (quoting N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 293 (2007)). "Only when the trial court's conclusions are so 'clearly mistaken' or 'wide of the mark' should an appellate court intervene and make its own findings to ensure that there is not a denial of justice." Ibid. (quoting N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007)).

A.

We first address defendant's argument that the trial judge erred in not applying this court's decision in Doriguzzi to exclude the results of the HGN test that he was under the influence. He contends that even though Doriguzzi was decided within the context of a DUI proceeding, it applies to the Title 9 proceeding against him. He asserts the essence of the ruling is that the HGN test is scientifically unreliable and, therefore, is not admissible, absent additional scientific evidence of intoxication, such as a blood test, in all legal proceedings where a government entity is using the test to establish an individual should be found guilty or culpable because the individual was under the influence of alcohol or some other debilitating substance. Arguing the HGN test was the only evidence the Division presented to establish that he was

under the influence outside of "the subjective and unscientifically derived observations of [his] conduct and demeanor made by the Division's witnesses," defendant maintains the Division did not sustain its burden of proof.

Our analysis of <u>Doriguzzi</u> causes us to agree with defendant that it should be applied to this proceeding to bar evidence of the HGN test results performed on him by Officer Falzarano. There is no question that the HGN test is not admissible at a trial to show an individual is guilty of DUI as "neither this court nor our Supreme Court has . . . endorsed HGN testing." <u>Doriguzzi</u>, 334 N.J. Super. at 533. However, police can use them to ascertain probable cause for an arrest. <u>Id.</u> at 546. The Division and the Law Guardians argue that <u>Doriguzzi</u> should not apply because there is a higher standard of proof in a DUI trial – beyond a reasonable doubt – than in a Title 9 proceeding – preponderance of evidence. Simply put, this is a distinction without a difference. We determined in <u>Doriguzzi</u> that the HGN test was not reliable to show an individual is under the influence. This unreliability equally applies in the context of a Title 9 proceeding, where the State is using the test to prove that an individual is under the influence in order to sustain a charge of abuse or neglect. <u>See, e.g.</u>, <u>In re Accutane Litigation</u>, 234 N.J. 340, 398-400 (2018) (in which, our Supreme Court adopted, but with qualifications and caveats, the multi-factor test identified in <u>Daubert v. Merrell Dow Pharms., Inc.</u>, 509 U.S.

579, 593-95 (1993), so that trial courts would generally follow a more stringent approach regarding the admission of scientific evidence in civil cases).

Moreover, we agree with defendant that the trial judge should not have considered the HGN test because Officer Falzarano was not qualified as an expert. Being able to administer and explain the HGN test, as brought out by Officer Falzarano's testimony, necessitates training and experience. Thus, because the test requires "technical, or other specialized knowledge [to] assist the trier of fact to understand the evidence or to determine a fact in issue, [only] a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." N.J.R.E. 702. Since Officer Falzarano was not qualified as an expert, his testimony on the HGN test should not have been admitted.

B.

Our conclusion that the Family Part should not have considered testimony regarding the HGN test results does not require us to reverse the order that defendant abused or neglected his children because there was other independent credible evidence relied upon by the judge.

Defendant contends the Division presented no physical evidence, such as blood or urine tests, to prove that he was under the influence at the time Rina

was incapacitated. He notes the absence of drug paraphernalia in his house that would indicate drug use. He also alleges the twenty to twenty-five pills left in Rina's oxycodone bottle were consistent with her prescribed usage of one to two pills every four hours as needed. He explains that his condition observed by Officer Falzarano and the Division workers was due to sleep deprivation from working earlier that day and mostly every day prior to the incident, and caring for: his newborn son; Rina, who was recovering from a recent cesarean section; the three older children; and the family home. However, we are unpersuaded with these contentions, as there was sufficient credible evidence in the record to support a finding of abuse or neglect.

Because defendant failed to submit to multiple requests for drug screening, even though he agreed to do so, the Division was unable to establish physical proof that he was unable to supervise his children because he was under the influence.[4] And we need not dwell on trying to parse how many oxycodone pills Rina consumed, or possibly, for that matter, consumed by defendant, based upon the amount of pills remaining in the bottle when the police and the Division arrived at the couple's home. Suffice it to say, it is clear that Rina was unconscious – regardless of whether it was due to opiates,

---

[4] Because the court did not draw a negative inference from defendant's failure to appear for urine screens, we need not address the effect of his lack of cooperation.

14

or smoking K2, or a combination of the two – and could not be revived by defendant, the children, the grandmother, the police, or the first aid responders. At the same time, there was testimony that defendant was in his own "twilight zone" because he was under the influence.

Officer Falzarano and Gambardella's testimony that defendant had blood shot eyes, was groggy, had slurred speech, was unable to provide coherent responses to simple questions, and had to use the wall for support while attempting to walk or stand on his own, is sufficient to allow the judge to find that defendant was under the influence and unable to care for his four minor children. See N.J.R.E. 701 (stating a witness may offer lay opinion "if it (a) is rationally based on the perception of the witness and (b) will assist in understanding the witness' testimony or in determining a fact in issue."); see also State v. Bealor, 187 N.J. 574, 577, 587-89 (2006) (holding competent lay observations – a person's demeanor, appearance, and speech – of intoxication, combined with additional independent proofs, demonstrating defendant's consumption of drugs alone, is sufficient to allow the judge to conclude that the defendant was intoxicated). We conclude there is no reason to find fault with the judge's crediting of their testimony, while rejecting defendant's explanation that his behavior was because he was exhausted from working too much and caring for his family.

 A-1343-17T1

Although the children were not physically harmed, we are satisfied with the judge's finding that defendant's inability to attend to his children while Rina was unconscious caused emotional harm to twelve-year-old Trent, who was forced to take charge of the situation before contacting his grandmother in a "state of panic," and continued to exhibit stress over his mother's situation even after help arrived. Furthermore, defendant's inability to address Rina's incapacity created a substantial risk of physical harm to Trent and his siblings, especially the four-day-old Von, as they were left without any proper adult supervision. See N.J. Div. of Child Prot. & Permanency v. B.O., 438 N.J. Super. 373, 385 (App. Div. 2014) ("Parents who use illegal drugs when caring for an infant exposes that baby to many dangers due to their impaired judgement."). Since the record shows that defendant failed to exercise a minimum degree of care under the circumstances because he was under the influence, the Family Part fairly concluded that he abused or neglected his children.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1343-17T1