# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2687-19

NEW JERSEY DIVISION
OF CHILD PROTECTION
AND PERMANENCY,

     Plaintiff-Respondent,

v.

M.H., A.S., and M.H.,

     Defendants,

and

D.F.,

     Defendant-Appellant.

_____

IN THE MATTER OF M.S.H.,
A.S., and N.D.F., minors.

_____

Submitted March 17, 2021 – Decided April 28, 2021

Before Judges Fuentes, Whipple, and Rose.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FN-20-0043-19.

Joseph E. Krakora, Public Defender, attorney for appellant (Patricia Nichols, Assistant Deputy Public Defender, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Mary C. Zec, Deputy Attorney General, on the brief).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minors (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Nancy P. Fratz, Assistant Deputy Public Defender, of counsel and on the brief).

PER CURIAM

In this Title Nine action, defendant D.F. appeals from a fact-finding order, now final, that he abused or neglected the daughters of his paramour, M.H. (Mother)[1]: M.S.H. (Mary), born June 2009; and A.S. (Anna), born June 2012, by engaging in acts of domestic violence with Mother in the presence of both girls. Defendant also appeals from the same order that he abused or neglected

---

[1] We use initials to preserve the confidentiality of the proceedings, R. 1:38-3(d)(12), and pseudonyms for ease of reference.

his biological daughter, N.D.F. (Nina), born May 2016, by driving under the influence of marijuana while Nina was in the car (DUI incident).[2]

On appeal, defendant raises the following points for our consideration:

POINT I

THE FACT-FINDING HEARING CONCLUSIVELY ESTABLISHED THAT [DEFENDANT] ONLY BRIEFLY LIVED WITH [MOTHER] AND HER CHILDREN, PRIOR TO THE BIRTH OF NINA, WAS NEVER A CARETAKER, DID NOT ASSUME RESPONSIBILITY FOR CARE, CUSTODY OR CONTROL, AND HAD NO LEGAL DUTY FOR SUCH CARE OF [MOTHER]'S CHILDREN AS DEFINED IN N.J.S.A. 9:6-8.21 AND N.J.S.A. 9:6-2; THEREFORE, THE JUDGE'S ERRONEOUS FINDING OF ABUSE AND NEGLECT MUST BE REVERSED.
[(Not raised below)]

POINT II

THE TRIAL JUDGE ERRED IN FAILING TO PROPERLY DEFINE AND DECIDE THE CHARGES AGAINST [DEFENDANT], COMPELLING REVERSAL.
[(Not raised below)]

---

[2] M.H. is the biological mother of all three girls and a son, K.O.-A., born December 2013, whose biological father is R.O.-A. Mother; K.O.-A.; R.O.-A.; Mary's father, M.H.; and Anna's father, A.S., are not parties to this appeal.

A-2687-19

## POINT III

THE TRIAL COURT FAILED TO ENFORCE THE REQUIREMENTS FOR PROPER ADMISSION OF EVIDENCE OF DRIVING WHILE INTOXICATED AND ERRED IN ALLOWING THE OFFICER TO REFER TO HIS PRIOR HISTORY WITH DEFENDANT, UNDULY PREJUDICING DEFENDANT, COMPELLING REVERSAL OF THE JUDGMENT BELOW.
[(Partially raised below)]

## POINT IV

BECAUSE THE TRIAL COURT ERRED IN ADMISSION OF THE STATE'S EVIDENCE AND TESTIMONY OF EVALUATORS OF TWO OF THE CHILDREN, AND NO OTHER EVIDENCE SUPPORTED THE FINDINGS FOR WHICH THE TRIAL JUDGE RELIED ON THAT EVIDENCE, THE JUDGMENT OF ABUSE MUST BE REVERSED.

The Division of Child Protection and Permanency and Office of the Law Guardian urge us to affirm the judge's order. Because we conclude there was sufficient credible evidence in the record supporting the family judge's decision, we reject defendant's contentions and affirm.

## I.

During the six-day fact-finding hearing, the Division presented the testimony of caseworkers, Tanisha McKinney, Chanel Dickey, and Octavio Andrade; expert witnesses in the field of mental health, Leisa Walker, LCSW

and Lynne Einhorn, LCSW; Plainfield Police Department members, Sergeant Jerry Plum and Officer Danielle Carvalho; M.J., the maternal grandmother of the children, (Grandmother); and Mother. The Division also moved into evidence numerous documents, including its investigative reports, the psychosocial evaluations of Mary and Anna, and police reports pertaining to the DUI incident. Defendant did not testify or present any evidence.

The trial judge's cogent oral decision details the facts underpinning his conclusion that defendant abused or neglected all three children. We incorporate the judge's factual findings by reference, highlighting those that are pertinent to this appeal. We also recite the facts in the trial record that dispel the issues raised for the first time on appeal.

Between March 12 and August 28, 2018, the Division received three referrals concerning the family. School officials made the initial referral to the Division, reporting concerns about domestic violence between defendant and Mother. Caseworker Tanisha McKinney met with Mother, Mary, age eight, and Anna, age nine. Mary was guarded during her interview with McKinney and said she never saw defendant and Mother fighting. But Mary said she was afraid when she heard the fighting, prompting Mary and her sisters to hide in their

bedroom. When interviewed by McKinney, Anna was more talkative than Mary. Anna said she saw defendant "drag [Mother] by her hair."

Although the Division did not substantiate defendant or Mother for abuse, Mary, Anna, and Mother were referred for psychosocial mental health evaluations. During their evaluations, Mary and Anna elaborated about the domestic violence in the home.

Walker evaluated Anna, who disclosed intrusive memories of the fighting, feelings of fear when recalling the fighting, and avoidance of the trauma by fleeing to her bedroom when defendant entered the home. Walker diagnosed Anna with other specified trauma and stressor-related disorder based on the child's self-reporting. Walker recommended treatment with a therapist specializing in trauma.

Einhorn evaluated Mary, who reported that she cried when Mother and defendant fought. Mary said defendant would break into the home through a window. Because defendant had threatened to kill her, her sisters, and her mother with his gun, she expressed fear that he would carry out his threat. When asked how she would use "three wishes," Mary's only wish was for defendant to "be gone." Mary displayed symptoms of trauma, such as: fear that something bad would happen to her, including that defendant would kill her; intrusive

6

memories of the fighting; and feelings of helplessness. Einhorn concluded Mary exhibited symptoms of post-traumatic stress disorder but recommended further evaluation by a therapist for a diagnosis.

Grandmother testified that "sometime in 2017" Mary said she saw defendant's gun. On various occasions when defendant and Mother were fighting, Mary ran across the street to Grandmother's home. According to Grandmother, Mary was "afraid because of all the domestic violence that was taking place in the house. [Mary] was very upset. Whether it was physical or verbal, she was very upset about it. And she was scared." When asked to approximate the frequency of those occurrences, Grandmother replied, "it was often enough . . . too many times."

Mother testified that defendant engaged in loud, physical altercations with her on a weekly basis within earshot of the girls. Defendant grabbed Mother by the hair, slapped her, and spit on her in the presence of her daughters. Mother said defendant repeatedly threatened to kill her. When Mother attempted to call the police, defendant took her phone and "sometimes even br[oke] [her] phone." Mother confirmed the children's accounts that Mary, Anna, and Nina would hide in their bedroom when defendant became violent, or flee to Grandmother's home.

7

The allegations of abuse or neglect of Nina arise from a single incident. On the morning of August 28, 2018, Grandmother was caring for Mary, Anna, and Nina in her home. Defendant arrived unexpectedly and said he was there to pick up Nina. He ignored Grandmother's inquiry as to whether Mother knew of that arrangement. Instead, defendant "shoved" Grandmother aside, removed Nina from the couch, and headed for the door. When Grandmother said she was calling the police, defendant called her a "bitch," threatened to have someone "beat . . . [her] ass every day," and spat at her screen door.

Soon after Grandmother notified the police, an officer stopped defendant's car. Plum, who knew defendant, arrived at the scene within minutes and smelled a "very strong odor of raw marijuana emanating from [defendant's] person." Defendant was sweating "profusely" and "talking a lot." He spoke "rapidly" and repeatedly insisted he was "a good father." Defendant "removed a bag [of marijuana] from his pants and then several bags fell out of his leg." Defendant acknowledged he smoked marijuana daily but denied doing so that day. Plum nonetheless believed defendant was under the influence of marijuana and could not safely drive a vehicle.

Nina was not strapped into a car seat; she was seated in the backseat on a "booster seat," without safety straps. When Plum removed Nina from the seat, he found a metal marijuana grinder "wedged underneath the seat."

The DUI incident was referred to the Division for investigation. Following Andrade's investigation, the Division substantiated defendant for abuse or neglect of Nina in connection with the DUI incident, but did not substantiate defendant specifically for substance abuse that threatens a child.

After counsel waived closing statements, the trial judge issued a thoughtful decision from the bench. The judge carefully reviewed the testimony and documentary evidence presented at the hearing and concluded the Division established by a preponderance of evidence that defendant had abused or neglected Mary, Anna, and Nina under N.J.S.A. 9:6-8.21(c)(4)(b). The judge elaborated:

> As a result of the harm that was perpetrated upon [Mary and Anna], as a result of the fact that there was danger of future harm if the domestic violence continued, I find that there was abuse and neglect of [Mary] and [Anna]. And . . . with respect to [Nina], I find that [defendant's] operating a motor vehicle while under the influence of marijuana with marijuana in the car, marijuana that was found on his person in close proximity to [Nina], exposes her . . . to the imminent danger of harm . . . [from] the possibility that she could have ingested the marijuana which was located in close proximity to her.

In reaching his decision, the trial judge found the hearsay statements of Mary and Anna were sufficiently corroborated by the testimony of Grandmother and the expert witnesses, all of whom the judge found credible. The judge also found Plum's testimony "very credible." Recognizing the officer knew defendant "for many years," the judge cited the "personal observations" Plum made of defendant "at the scene, including the smells, the sights, and the sounds, and based on his training in the field." The judge found uncontroverted Plum's testimony that defendant "was under the influence of marijuana while driving [Nina] in the car."

Following a dispositional hearing, the judge determined there was no longer a need to continue litigation and dismissed the matter. This appeal followed.

## II.

## A.

Our limited standard of review of a family court's fact-finding determination is well settled. N.J. Div. of Youth & Family Servs. v. R.D., 207 N.J. 88, 112 (2011). On appeal from orders issued in Title Nine actions, we accord considerable deference to the trial court's credibility determinations and findings of fact when those findings are supported by adequate, substantial, and

credible evidence. N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 278-79 (2007). We maintain that deference "unless the trial court's findings went so wide of the mark that a mistake must have been made." Id. at 279 (internal quotation marks omitted). Given a family court's special expertise in matters concerning children, we do not readily second-guess its factual findings. N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 553 (2014). Legal conclusions are subject to de novo review. Div. of Child Prot. & Permanency v. V.E., 448 N.J. Super. 374, 384 (App. Div. 2017).

N.J.S.A. 9:6-8.21(c) defines various circumstances that can comprise the abuse or neglect of a child. Among other things, the statute specifically covers:

> [A] child whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or guardian, as herein defined, to exercise a minimum degree of care . . . in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof, including the infliction of excessive corporal punishment; or by any other acts of a similarly serious nature requiring the aid of the court . . . .
>
> [N.J.S.A. 9:6-8.21(c)(4)(b).]

A court's finding of abuse or neglect must be based on a preponderance of the evidence when the proof is considered in its totality. N.J.S.A. 9:6-

8.46(b)(1); N.J. Div. of Youth & Family Servs. v. C.M., 181 N.J. Super. 190, 201 (App. Div. 1981) ("In child abuse and neglect cases the elements of proof are synergistically related.  Each proven act of neglect has some effect on the [child].  One act may be 'substantial' or the sum of many acts may be 'substantial.'").  Notably, the Title Nine proof standard is less stringent than in guardianship cases for the termination of parental rights, which must instead be proven by clear and convincing evidence.  N.J. Div. of Child Prot. and Permanency v. R.L.M (In re R.A.J.), 236 N.J. 123, 145 (2018); see N.J.S.A. 30:4C-15.1(a).  The proofs adduced before the trial judge amply met these evidentiary standards.

B.

For the first time on appeal,[3] defendant claims he was not a "parent or guardian" of Mary or Anna, within the meaning of N.J.S.A. 9:6-8.21(1)(a).  Defendant contends he did not exercise authority over Mary and Anna and did not assume responsibility for their "care, custody, or control."  Defendant's contentions are unavailing.

---

[3] In his merits brief defendant's point heading cites portions of the record in which he elicited testimony that Mary and Anna had been exposed to domestic violence between Mother and other men.  Based on our review of the record, however, defendant never asserted he did not meet the definition of a "parent or guardian" at any time before or during the fact-finding hearing.

"Generally, an appellate court will not consider issues, even constitutional ones, which were not raised below." State v. Galicia, 210 N.J. 364, 383 (2012); see also Div. of Youth and Family Servs. v. M.C. III, 201 N.J. 328, 339 (2010). Exceptions to this rule include issues that present a matter of "great public importance" or pertain to a court's jurisdiction. M.C. III, 201 N.J. at 339. As defendant correctly notes, subject matter jurisdiction "can be raised at any time, even on appeal." Pressler & Verniero, Current N.J. Court Rules, cmt. 2.1 on R. 4:6-2 (2021); see also R. 4:6-7. We therefore consider defendant's jurisdictional argument, recognizing the trial judge, Division, and law guardian were not afforded the opportunity to directly address defendant's newly-minted contentions.

Pursuant to N.J.S.A. 9:6-8.21(1)(a), a "[p]arent or guardian means any natural parent, adoptive parent, resource family parent, stepparent, paramour of a parent, or any person, who has assumed responsibility for the care, custody, or control of a child or upon whom there is a legal duty for such care." In turn, the Division's regulations define "paramour" as "a parent's or guardian's partner, other than his or her spouse, who is in a care-giving role for the alleged child victim. This definition is applicable whether the paramour resides in the home,

frequents the home, is a same-sex partner, or is a current or ex-boyfriend or girlfriend."  N.J.A.C. 3A:10-1.3.

To support his contentions, defendant relies on our decision in New Jersey Division of Child Protection & Permanency v. B.H., 460 N.J. Super. 212 (App. Div. 2019).  In B.H., we held the family court lacked jurisdiction to determine a boyfriend abused or neglected a five-year-old child under Title Nine.  Id. at 221.  In reaching our decision, we recognized the lack of evidence adduced at the hearing "to contradict [the defendant's] assertions that he did not assume a general and ongoing . . . care of [the child.]."  Ibid.  We noted the defendant visited the mother "twice a week" and stayed overnight "occasionally" during the course of a year prior to the incidents at issue.  Id. at 214.  Mother testified her relationship with defendant was "completely separate" from that of her daughter, who were not "together . . . on a regular basis."  Id. at 217.  We recognized:  "At most, [the defendant] supervised [the child] on two limited occasions."  Id. at 221.

By contrast in the present matter, Mother testified that defendant moved into the family home when she became pregnant with Nina in 2015.  Defendant lived with the family for several months, moving out at the end of April 2016, shortly before Nina's birth.  And in April or May of 2017, defendant "brought

A-2687-19

some stuff over to [Mother's] house and stayed, like, every night" even though "he still had his own place." Mother acknowledged defendant was not a "legal resident" of the home, but that he "frequent[ed] the home, very, very often." McKinney testified that Mother said "even if [she] tried to . . . prevent[] [defendant] from coming in[to the home, he] comes in anyway." Indeed, when McKinney was concluding her interviews of Mother and the girls, defendant "just walked into the home."

The record also reveals Anna told McKinney defendant did not live in the home but was there "every night." Anna later told Dickey that defendant watched the girls "for two days" when Mother was at work. Mary said defendant watched the girls when "[M]other need[ed] to quickly go to the store and is not out long" but that did not occur "often."

Notably, Anna also reported to Walker that when she and her sisters attempted to escape to Grandmother's home, defendant stopped them, stating, "nobody's leaving from this house; this scary house." Defendant also took the children's cell phones to prevent them from calling for assistance.

Most telling, however, are defendant's own words during his interview with Andrade at the Union County Jail following the DUI incident. Defendant referred to Mother "as his fiancée on numerous occasions throughout the

15

interview[,]" and said "they plan to get back together and raise the children as a family." Defendant acknowledged he had lived with Mother and would visit her on and off after the Division became involved.

We therefore conclude the record supports the judge's findings that defendant "at various times relevant to this suit, was, in fact, the guardian at times of [Mary] and [Anna]." Defendant lived in the home and disciplined the children and at times he was delegated authority by Mother to watch the children.

## C.

We next consider the issues raised in point IV, which challenge the trial judge's abuse or neglect findings regarding Mary and Anna. Defendant contends the judge erroneously relied on the expert testimony of Walker and Einhorn, who were not qualified as experts in the field of psychology here, where the Division elicited opinions "within a reasonable degree of psychological certainty." Defendant contends both mental health expert witnesses were "under[]qualified" to render their opinions. We disagree.

During the fact-finding hearing, defendant questioned Walker about her qualifications, noting Walker had rendered her expert opinions in prior cases within a reasonable degree of "mental health certainty." But defendant

ultimately stipulated to Walker's expertise. During cross-examination, defendant elicited testimony from Walker that the Division had asked her to opine within a reasonable degree of psychological certainty, that she was not a psychologist, and she had been qualified as a mental health expert. Defendant did not, however, object to Walker's testimony or expertise. Nor did defendant move to strike Walker's testimony.

Our Supreme Court has held a "stipulation waives all challenges to the admissibility of . . . [an] expert's testimony." State v. A.O., 198 N.J. 69, 87 (2009). We discern no basis to depart from that holding here. As the judge aptly recognized in his final decision:

> Walker is a clinical social worker at Saint Peter's Hospital in the Dorothy B. Hersh Regional [Child] Protection Center. She has worked with the Child Protection Center for five years evaluating children involved with the Division. She has testified in court and has been admitted as an expert on the issues of mental health. Her [curriculum vitae] (CV) was admitted into evidence.
>
> Among her other responsibilities, . . . Walker evaluates children where there are allegations of physical or sexual abuse.

Among other achievements, Walker's CV reflects she achieved a bachelor-of-science degree in psychology and a master's degree in social work. Walker's employment at Saint Peter's Hospital included "crisis intervention [and] psycho-

17

education . . . to families impacted by trauma." Moreover, the judge did not rely upon Walker's diagnosis of Anna in rendering his decision that defendant abused or neglected the child.

Three trial days after Walker testified, Einhorn was qualified as an expert in mental health and child abuse. During direct examination, defendant "submit[ted]" to Einhorn's expertise in the absence of voir dire on her qualifications. On cross-examination, defendant questioned Einhorn as to whether she was qualified as an expert in "mental health" or "psychology," drawing an objection from the Division. Recognizing defendant had not previously objected to the qualifications or opinions of Walker or Einhorn, the judge permitted the parties to brief whether "a licensed clinical social worker has the authority under our case law to offer an opinion within a reasonable degree of psychological certainty."

Notably, before defense counsel continued her cross-examination, the judge asked Einhorn whether she could render her "opinions that were previously expressed within a reasonable degree of the certainty of the fields in which [she] practice[d] . . . that is, mental health as well as child abuse." Einhorn responded affirmatively.

18

Einhorn's testimony concluded that trial day. The judge did not render a decision on the psychological certainty issue raised during Einhorn's testimony. After the judge rendered his final decision, the judge responded to the Division's inquiry concerning the issue, stating: "I don't need an opinion other than what the therapist gave us, that the children were harmed, and I think that is sufficient for the purposes of my opinion." As with his analysis of Walker's testimony, the judge did not rely upon Einhorn's diagnosis of Mary when rendering his decision that defendant abused or neglected the child. Consequently, we discern no reversible error in the judge's decision here.

## D.

Finally, we turn to the overlapping and mostly belated contentions raised in defendant's points II and III. As a preliminary matter, we generally decline to consider issues that were not presented at trial. Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973). In his merits brief, defendant suggests the issues raised in points II and III were raised or at least partially raised below. For the sake of completeness, we have considered defendant's contentions and conclude they lack sufficient merit to warrant extended discussion in a written opinion. R. 2:11-3(e)(1)(E). We add only the following comments.

For the first time on appeal, defendant contends he was not placed on notice that the fact-finding hearing would encompass the Division's unsubstantiated finding he abused or neglected Nina while driving under the influence of marijuana. In the alternative, defendant claims the Division failed to establish defendant was intoxicated during the DUI incident and Plum's testimony about his prior encounters with defendant was prejudicial.

Initially, the Division's determination that defendant was not substantiated for neglect or abuse of Nina while under the influence of intoxicating substances is not relevant to the proceedings here, where the Division's complaint specifically alleged defendant was intoxicated during the DUI incident. The Division's findings are administrative, see N.J.A.C. 3A:10-7.3, and separate from those made by the trial court. Accord In re an Allegation of Physical Abuse Concerning R.P., 333 N.J. Super. 105, 117 (App. Div. 2000) (citation omitted) ("A finding by [the Division] that child abuse charges have not been substantiated, but that there is some indication a child was harmed or placed at risk of harm, is purely investigatory in nature, with none of the procedural protections of an adjudicatory proceeding.").

Indeed, the allegations set forth in the Division's complaint specifically averred:

> The police believe[d] [defendant] was under the influence of narcotics due to his behavior and he had two bags of marijuana on him. The police also found drug paraphernalia in the car that was within the child's reach. The police charged [defendant] with attempting to elude police, possession of marijuana, possession of drug paraphernalia, and endangering the welfare of a child . . . .

Moreover, at trial, defendant raised no objection to the admission of Plum's testimony regarding his observations that defendant emitted an odor of marijuana. That testimony was sufficient to establish defendant was under the influence. See Div. of Child Prot. & Permanency v. V.F., 457 N.J. Super. 525, 537-38 (App. Div. 2019). In V.F., we declined to require "additional independent proofs" of drug intoxication in the context of abuse or neglect proceedings. Id. at 537-38. Instead, we determined the testimony of the police officers that defendant was unable to stand on his own was sufficient for the trial court to conclude the defendant was intoxicated. Ibid.

In any event, the trial judge did not rely solely on defendant's driving while intoxicated in his determination that defendant abused or neglected Nina. The judge also found "the marijuana grinder, which was located in close proximity to [Nina], exposed [her] to the possibility of ingesting the marijuana or being harmed by the grinder" itself.

21

Nor do we find any merit in defendant's belated claims of prejudice by Plum's testimony that he knew defendant "for many years" from prior drug arrests in Plainfield. On the contrary, the trial judge specifically determined he "d[id] not place any relevance on the reasons for that prior involvement." Rather, the judge found "the sergeant's familiarity with [defendant was] relevant insofar as his assessment of [defendant]'s physical condition and behavior on August 28, 2018." The judge's decision warrants our deference. R.G., 217 N.J. at 553.

In sum, we are satisfied there was competent, credible evidence in the record to support the judge's finding that defendant abused or neglected all three children. See N.J. Div. of Youth & Family Servs. v. L.L., 201 N.J. 210, 226 (2010). The totality of the circumstances cited by the judge support his conclusion that the children were abused or neglected within the meaning of N.J.S.A. 9:6-8.21(c)(4)(b).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

22