# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3215-21

NEW JERSEY DIVISION OF
CHILD PROTECTION AND
PERMANENCY,

     Plaintiff-Respondent,

v.

J.V.,

     Defendant-Appellant,

and

A.A.,

     Defendant.

_____

IN THE MATTER OF W.A.,
a minor.

_____

Submitted March 20, 2024 – Decided September 5, 2024

Before Judges Vernoia and Gummer.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Passaic County, Docket No. FN-16-0057-21.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Richard Foster, Deputy Public Defender, of counsel and on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent (Sara Gregory, Assistant Attorney General, of counsel; Lisa J. Rusciano, Deputy Attorney General, on the brief).

Jennifer Nicole Sellitti, Public Defender, Law Guardian, attorney for minor (Meredith Alexis Pollock, Deputy Public Defender, of counsel; Linda Vele Alexander, Designated Counsel, on the brief).

PER CURIAM

Defendant J.V. appeals from a February 22, 2022 Family Part order finding she abused or neglected her daughter W.A, who was born in September 2020, by using marijuana, cocaine, and unprescribed Percocet while pregnant with the child and by causing actual harm to W.A., who tested positive for marijuana and opiates when she was born, "was diagnosed with neonatal abstinence syndrome (NAS), required extended hospitalization, and had to be administered morphine to treat her withdrawal symptoms."[1] Defendant also

_____

[1] We use initials to refer to W.A., her mother, defendant J.V., and her father, A.A., to protect the child's privacy and because records related to New Jersey

appeals from a May 10, 2022 order dismissing the Title Nine proceeding following the Division's filing of a guardianship complaint seeking termination of defendant's parental rights to W.A. Based on our review of the record and the parties' arguments, we vacate the orders and remand for further proceedings and for the court to issue new findings on the Division's claim defendant abused or neglected W.A.

## I.

Immediately following W.A.'s birth at Hackensack Medical Center, a hospital representative contacted the Division's Special Response Unit (SPRU) and made a referral regarding W.A. A screening summary report—completed by the SPRU and later admitted into evidence at the fact-finding hearing on the Division's complaint alleging defendant had abused or neglected W.A.—states a hospital representative had reported that defendant had limited prenatal care and had tested positive for marijuana, cocaine, and opiates, and that W.A. had been born at thirty-eight-weeks-gestation, weighing four pounds and twelve-and-four-tenths ounces. The screening summary reflects that the Division had

---

Division of Child Protection and Permanency (the Division) proceedings held pursuant to Rule 5:12 are excluded from public access under Rule 1:38-3(d)(12).

coded the referral as "Substance Abuse of Caregiver Threatens Child; Substance Affected Newborn."

According to a Division investigation summary report, which was admitted into evidence at the fact-finding hearing, Division caseworker Samantha Hicks reported that she had been advised by hospital staff that they were awaiting a toxicology screen for W.A. Hicks spoke with a hospital nurse who stated defendant had reported that she tested positive for THC, cocaine, and opiates during a July 2020 visit with a prenatal doctor.[2]

Hicks also spoke with defendant, who admitted she had been using marijuana and oxycontin during the last four months of her pregnancy and "was using cocaine from time to time" but had not used it recently. Defendant told Hicks she had used oxycodone to address back-pain issues during the last four months of the pregnancy; she had been taking oxycodone twice per day; and she had obtained the oxycodone "off the streets" because she had been unsuccessful in obtaining a prescription from a doctor. Hicks also reported that on September

---

[2] THC, or delta-9-tetrahydrocannabinol, "is believed to be the main ingredient that produces the psychoactive effect" in marijuana. Drug Enf't Admin., Marijuana/Cannabis (Oct. 2022), https://www.dea.gov/sites/default/files/2023-03/Marijuana-Cannabis%202022%20Drug%20Fact%20Sheet.pdf; see also Merriam-Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/THC (last visited Aug. 27, 2024) (THC is "the chief intoxicant in marijuana").

20, 2020, she was advised by the hospital that W.A. had tested positive for THC and opiates, had started experiencing withdrawal symptoms on September 19, 2020, and had been transferred to the neonatal intensive care unit (NICU). Defendant was discharged from the hospital, but W.A. remained in the hospital for further observation.

The investigation summary report further showed that on September 22, 2020, Division caseworker Diane Irene interviewed defendant at defendant's home.  During the interview, Irene informed defendant she had tested positive for marijuana, cocaine, and opiates, and W.A. had tested positive for marijuana and opiates, "which . . . caused withdrawal symptoms" for W.A.  Irene also reported that defendant said she had a prescription for oxycodone, but the prescription had been issued two days after W.A.'s birth.  According to Irene's report, defendant stated she had last used cocaine in June 2020, and she had used marijuana throughout her pregnancy.

The Division's investigation summary report further details information concerning W.A. that Irene received from various hospital staff in September. The investigation summary report states that during her hospital stay, W.A. was gradually weaned off morphine as her withdrawal symptoms, as measured by NAS testing, improved until her discharge in late September.  Hospital staff also

5

reported to Irene that at various times during W.A.'s hospitalization, the child had been observed to "appear[] inconsolable," had "twitch[ed]," and had "tight muscle tone" after she was taken off morphine. The hospital also reported to Irene that a test of W.A.'s "meconium levels" had been "presumptively positive for THC and opiates."

In late September, the hospital discharged W.A. to defendant's care subject to defendant's agreement to a Division safety action plan requiring that defendant's sister supervise defendant's interactions with W.A. The Division also required that defendant undergo weekly random urine screens, but defendant missed many of the screens, tested positive for various drugs at an October 14, 2020 urine screen, and agreed to undergo substance-abuse treatment. Defendant did not participate in the treatment sessions and again tested positive for various drugs on October 21, 2020.

On November 10, 2020, the Division filed a complaint seeking an order for care and supervision of W.A. based on defendant's positive drug screen results and failure to submit to drug screens and attend substance-abuse treatment. At a December 8, 2020 hearing on the complaint, the Division explained that it sought an order for care and supervision of W.A. because of her "medical fragility" at birth and her parents' substance-abuse issues, and

because W.A. was at imminent risk of harm. Defendant's counsel represented that defendant would comply with the Division's services moving forward.

The court awarded the Division care and supervision of W.A., explaining defendant had continued to test positive for illicit drugs and the Division had made a prima facie showing that W.A. had been "abused and neglected within the meaning of N.J.S.A. 9:6-8.21." The court entered an order granting the Division care and supervision of W.A.

At a January 19, 2021 hearing, the Division asserted defendant had continued to miss urine screens, and treatment intake appointments, tested positive in a urine screen for illicit drugs, and had failed to obtain medical insurance for W.A. Counsel for the Division advised the court that the Division would seek custody of W.A. if defendant continued her noncompliance with the requirements that she appear for drug screens and engage in substance-abuse treatment. The court entered an order continuing the Division's care and supervision of W.A. and the court advised defendant she had thirty days to demonstrate compliance.

The following month, the Division filed an amended complaint seeking custody, care, and supervision of W.A. The complaint alleged defendant continued testing positive for illicit drugs and had failed to attend appointments,

including appointments for wellness checks for W.A. Following a March 1, 2021 hearing, the court entered an order granting the Division legal and physical custody of W.A.

At an August 30, 2021 hearing, the Division asserted defendant had been noncompliant with its requests for urine screens, mental health treatment, psychological and psychiatric evaluations, and substance-abuse treatment, and that defendant had not responded to the Division's efforts to arrange therapeutic visitation with W.A. The court entered an order continuing the Division's legal and physical custody of W.A. and directing that defendant comply with services.

On February 22, 2022, the court conducted a fact-finding hearing on the Division's claim defendant had abused or neglected W.A. The Division presented a single witness, Irene, in support of its claim and, during the hearing, the Division moved into evidence four exhibits: its initial screening summary report; its investigation summary report; medical records from Hackensack Medical Center related to defendant's delivery of W.A.; and medical records from Hackensack Medical Center concerning W.A.'s birth and subsequent hospitalization. The Division's investigation summary report and the hospital's medical records were admitted into evidence without objection. Defendant objected on hearsay grounds "only" to the admission of the initial screening

summary report. The court admitted the screening summary report on the condition that it could not be relied on to establish the truth of any of the hearsay statements included within it and it could be used only to explain "the Division's reaction to receiving the referral."

Irene, however, testified without objection concerning the screening summary report, noting that it stated the Division had received a referral from Hackensack Medical Center based on defendant's admission to hospital staff she had taken oxycodone that she had bought "off the streets" and had used marijuana and cocaine during her pregnancy. Irene also testified that during her interview with defendant, they discussed that W.A. was in the NICU exhibiting signs of withdrawal, and the hospital was administering morphine to alleviate the withdrawal symptoms. Irene further explained defendant had admitted that during her pregnancy, she had used oxycodone she obtained from "people" for back pain, marijuana because she had a loss of appetite, and cocaine.

Irene also testified that W.A.'s medical records, which, as noted, were admitted into evidence without objection, include an NAS diagnosis for W.A., a toxicology report showing W.A. tested positive for opiates and marijuana at birth, and records showing W.A. was treated with morphine in the NICU for NAS symptoms. Irene testified that based on the information she had obtained

9

and reviewed during her investigation, including defendant's and W.A.'s medical records, she recommended that defendant be substantiated for abuse or neglect of W.A. because defendant had tested positive for opiates and marijuana and W.A., who also tested positive for opiates and marijuana, had been affected by the opiates and marijuana defendant had consumed during her pregnancy.

In response to cross-examination by W.A.'s law guardian, Irene explained that defendant had admitted doing "four or five lines of cocaine in June" 2020, and defendant had failed to produce a prescription for the oxycodone and marijuana she used during her pregnancy. Irene also testified that her investigation disclosed that W.A. suffered from withdrawal symptoms, including "increased muscle tone and jittering" following her birth and had stayed in the hospital's NICU for eleven days "on morphine."

Defendant's counsel did not ask Irene any questions. Nor did A.A.'s counsel. And defendant's counsel did not present any witnesses or evidence.[3]

Following the presentation of the evidence, the Division argued Irene's testimony and the medical records in evidence established defendant had admitted: "to substance use knowing that she was pregnant"; "using marijuana every day of her pregnancy" without a medical marijuana prescription; using

---

[3] Defendant did not appear for the hearing.

cocaine in June 2020; and using oxycodone "bought . . . off the streets" without a prescription during her pregnancy. The Division further argued that "[a]s a result of [defendant's] consumption of these substances, [W.A.] also tested positive for marijuana and opiates and suffered from withdrawal symptoms that required her to be admitted into the NICU and administered morphine for eleven days." The Division requested a Title Nine finding that defendant had abused or neglected W.A. because the child had suffered "actual harm" following her birth by her exposure to the substances defendant had ingested during her pregnancy, the hospital's "[NAS] diagnosis," and W.A.'s "prolonged hospitalization."

W.A.'s law guardian similarly argued for a finding defendant had abused or neglected the child. The law guardian cited W.A.'s NAS diagnosis, "high and varied" NAS scores during W.A.'s lengthy hospital stay, and the hospital records reflecting W.A. was at times "inconsolable" while in the hospital as establishing "actual harm to the child" to support an abuse-or-neglect finding under Title Nine.

In response to the Division's and law guardian's arguments in support of an abuse-or-neglect finding, defendant's counsel simply "submi[tted] on . . . the evidence."

In an opinion from the bench, the court first explained it would address the credibility of the witness, Irene, but then noted only that she was the Division investigator assigned to the matter. Although the court did not make any express findings concerning Irene's credibility, it is clear the court found her to be a credible witness; the court did not state otherwise, the court relied on Irene's testimony in making its findings of fact, and the record is bereft of evidence undermining or contradicting her testimony. See, e.g., State v. Locurto, 157 N.J. 463, 474 (1999) (explaining that although the trial court "did not specifically articulate detailed findings of credibility in the record, the reasons supporting its determinations of the witnesses' relative credibility may be inferred from, and are well-supported by, the account of the facts and witnesses' testimony presented in its decision").

The court then noted the documentary evidence that had been admitted into evidence. It first explained the screening summary report had been admitted into evidence but "not [for] what it says with respect to the referral" and instead only to explain the Division's reaction to the referral. The court also noted the investigation summary report, explaining it was kept in the regular course of the Division's business and was made contemporaneously with the events described in it. The court also noted that defendant's and W.A.'s medical records had also

12

been admitted into evidence and they were kept in the normal course of the hospital's business.

The court summarized Irene's testimony, explaining defendant admitted she had used marijuana every day during her pregnancy with knowledge she was pregnant and had also used oxycodone and cocaine during the pregnancy. The court further found defendant's use of marijuana, oxycodone, and cocaine had affected W.A. because W.A. tested positive for marijuana and opiates at birth, was diagnosed with NAS, and required hospitalization and treatment with morphine to alleviate withdrawal symptoms.

The court concluded defendant abused or neglected W.A. through her use of marijuana, oxycodone, and cocaine while she was pregnant because the substances caused actual harm to W.A.'s physical, mental, and emotional condition following her birth. More particularly, citing to W.A.'s medical records, the court found W.A. suffered actual harm by experiencing withdrawal symptoms. The court also found that a NAS diagnosis does not require expert testimony as long as the medical records that include the diagnosis satisfy the business-records exception, N.J.R.E. 803(c)(6), to the hearsay rule, N.J.R.E. 802. In conclusion, the court explained that based on the credibility of Irene,

and the "credibility" of the investigation summary report and medical records, defendant had abused or neglected W.A. by causing her actual harm.

The court entered an order finding under N.J.S.A. 9:6-8.21(c) that defendant had abused or neglected W.A. based on its determination defendant admitted to using marijuana, cocaine, and "unprescribed Percocet" during her pregnancy; defendant tested positive for marijuana, cocaine, and opiates at the time of W.A.'s birth; W.A. tested positive for marijuana and opiates at birth; and W.A. was diagnosed with NAS, required hospitalization, and was administered morphine to treat her withdrawal symptoms. The court subsequently entered a separate order terminating the Title Nine proceeding because the Division had filed a guardianship complaint against defendant.

II.

Title Nine, N.J.S.A. 9:6-1 to -8.114, "governs acts of abuse and neglect against a child." N.J. Div. of Youth & Fam. Servs. v. A.L., 213 N.J. 1, 18 (2013) (citation omitted). The purpose of Title Nine "is to protect children 'who have had serious injury inflicted upon them' and to ensure that they 'are immediately safeguarded from further injury and possible death.'" N.J. Div. of Child Prot. & Permanency v. J.R.-R., 248 N.J. 353, 368 (2021) (quoting N.J.S.A. 9:6-8.8(a)); see also N.J. Div. of Child Prot. & Permanency v. A.B., 231 N.J. 354, 368 (2017)

14

("The focus of Title [Nine] 'is not the "culpability of parental conduct" but rather "the protection of children."'"(quoting <u>Div. of Child Prot. & Permanency v. E.D.-O.</u>, 223 N.J. 166, 178 (2015))).

In a Title Nine proceeding, the Division bears the burden of establishing "by a preponderance of the competent, material, and relevant evidence that the parent or guardian abused or neglected the affected child." <u>N.J. Div. of Child Prot. & Permanency v. V.F.</u>, 457 N.J. Super. 525, 533 (App. Div. 2019) (citing N.J.S.A. 9:6-8.46(b)). To satisfy that burden, the Division must present "proof of actual harm or, in the absence of actual harm, 'the Division [is] obligated to present competent evidence adequate to establish [the child was] presently in imminent danger of being impaired physically, mentally, or emotionally.'" <u>Ibid.</u> (first alteration added) (quoting <u>N.J. Div. of Youth & Fam. Servs. v. S.I.</u>, 437 N.J. Super. 142, 158 (App. Div. 2014)).

Our review of a trial court's finding of abuse or neglect is "limited" and "should be upheld when supported by adequate, substantial, and credible evidence." <u>N.J. Div. of Youth & Fam. Servs. v. R.G.</u>, 217 N.J. 527, 552 (2014). We owe deference to the trial court because it "has the opportunity to make first-hand credibility judgments about the witnesses who appear on the stand; it has a 'feel of the case' that can never be realized by a review of the cold record."

N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008) (quoting N.J. Div. of Youth & Fam. Servs. v. M.M., 189 N.J. 261, 293 (2007)).

"[B]y virtue of its specific jurisdiction, the Family Part 'possess[es] special expertise in the field of domestic relations' and thus 'appellate courts should accord deference to [F]amily [Part] fact[-]finding.'" R.G., 217 N.J. at 553 (first and second alterations in original) (quoting Cesare v. Cesare, 154 N.J. 394, 412-13 (1998)). "Therefore, '[w]e will not overturn a family court's fact[-]findings unless they are so "wide of the mark" that our intervention is necessary to correct an injustice.'" N.J. Div. of Child Prot. & Permanency v. B.P., 257 N.J. 361, 374 (2024) (first alteration in original) (quoting N.J. Div. of Youth & Fam. Servs. v. F.M., 211 N.J. 420, 448 (2012)).

Pertinent here, under Title Nine, an abused or neglected child is:

> a child less than 18 years of age . . . whose physical, mental, or emotional condition has been impaired or is in imminent danger of becoming impaired as the result of the failure of his parent or guardian . . . to exercise a minimum degree of care . . . in providing the child with proper supervision or guardianship, by unreasonably inflicting or allowing to be inflicted harm, or substantial risk thereof . . . .
>
> [N.J.S.A. 9:6-8.21(c)(4)(b).]

Our Supreme Court has interpreted this statute as extending "the law's protection" only to "the condition of a child after birth[,]" while observing that

16

"[t]he behavior of an expectant mother during pregnancy can still be relevant if it relates to a child's suffering or the risk of harm to a child after birth." A.L., 213 N.J. at 22.

In a Title Nine abuse-or-neglect hearing against a parent, the Division has the burden by a preponderance of evidence to show either "evidence of actual impairment to the child[,]" or "in a case where there is no such proof[,] . . . evidence of imminent danger or substantial risk of harm" to the child, due to the parent's failure to exercise a minimum degree of care. Ibid. (citing N.J.S.A. 9:6-8.21(c)(4)(b)). Because "'[n]ot all instances of drug ingestion by a parent will substantiate a finding of abuse or neglect,'" A.L., 213 N.J. at 24 (quoting N.J. Div. of Youth & Fam. Servs. v. V.T., 423 N.J. Super. 320, 331-32 (App. Div. 2011)), to prove actual impairment or harm, the Division must offer "proof that a child is suffering from withdrawal symptoms at birth" or "evidence of respiratory distress, cardiovascular or central nervous system complications, low gestational age at birth, low birth weight, poor feeding patterns, weight loss through an extended hospital stay, lethargy, convulsions, or tremors" as a result of the parent's drug use. Id. at 22-23. This evidence may come in the form of "medical and hospital records" or testimony of "health care providers, caregivers, or qualified experts." Id. at 23.

Alternatively, to prove a child is in "imminent danger or substantial risk of harm," the Division may point to several factors such as a parent's drug use during pregnancy or positive drug tests or failure to attend substance-abuse treatment following the child's birth. Id. at 23-24. However, "past use of drugs" alone may not always "substantiate a finding of abuse and neglect in light of" the statute's plain language. Ibid. The Division must prove that such usage resulted in an imminent danger or substantial risk of harm to the child. Ibid. "[A] court need not sit idly by until a child is actually impaired by parental inattention or neglect." A.B., 231 N.J. at 370.

A "'fact-finding hearing is a critical element of the abuse and neglect process[,]'" N.J. Div. of Child Prot. & Permanency v. S.G., 448 N.J. Super. 135, 143 (App. Div. 2016) (quoting N.J. Div. of Youth & Fam. Servs. v. J.Y., 352 N.J. Super. 245, 264 (App. Div. 2002)), where the Division may submit only "'competent, material, and relevant evidence[,]'" ibid. (quoting N.J. Div. of Youth & Fam. Servs. v. P.W.R., 205 N.J. 17, 32 (2011)).

Title Nine authorizes the admission of certain types of evidence at an abuse-or-neglect fact-finding hearing. For instance, N.J.S.A. 9:6-8.46(a)(3) provides in relevant part that in a Title Nine hearing,

> any writing, record or photograph, whether in the form
> of an entry in a book or otherwise, made as a

> memorandum or record of any condition, act, transaction, occurrence or event relating to a child in an abuse or neglect proceeding of any hospital or any other public or private institution or agency shall be admissible in evidence in proof of that condition, act, transaction, occurrence or event, if the judge finds that it was made in the regular course of the business of any hospital or any other public or private institution or agency, and that it was in the regular course of such business to make it, at the time of the condition, act, transaction, occurrence or event, or within a reasonable time thereafter, shall be prima facie evidence of the facts contained in such certification.
>
> [N.J.S.A. 9:6-8.46(a)(3) (emphasis added).]

A writing or record satisfies the regular-course-of-business requirement of N.J.R.E. 808 if it satisfies the business-records exception, N.J.R.E. 803(c)(6), to the hearsay rule, N.J.R.E. 802. N.J. Div. of Child Prot. & Permanency v. N.T., 445 N.J. Super. 478, 494 (App. Div. 2016). Similarly, Rule 5:12-4(d) provides that Division "reports by staff personnel or professional consultants," shall be admitted into evidence "pursuant to N.J.R.E. 803(c)(6) and 801(d)," and "[c]onclusions drawn from the facts stated therein shall be treated as prima facie evidence, subject to rebuttal."

However, "[e]xpert diagnoses and opinions in a Division report are inadmissible hearsay, unless the trial court specifically finds they are trustworthy under the criteria in N.J.R.E. 808, including that they are not too

19

complex for admission without the expert testifying subject to cross-examination." N.T., 445 N.J. Super. at 487. Diagnoses and opinions of a medical-services provider in a record or report also constitute inadmissible hearsay, id. at 500, unless they are included in business records under N.J.R.E. 806(c)(6) and satisfy the requirements of N.J.R.E. 808, which provides:

> Expert opinion which is included in an admissible hearsay statement shall be excluded if the declarant has not been produced as a witness unless the trial judge finds that the circumstances involved in rendering the opinion, including the motive, duty, and interest of the declarant, whether litigation was contemplated by the declarant, the complexity of the subject matter, and the likelihood of accuracy of the opinion, tend to establish its trustworthiness.

We have held that "when the expert is not produced as a witness, [N.J.R.E. 808] requires exclusion of his or her expert opinion, even if contained in a business record, unless the judge makes specific findings regarding trustworthiness." N.J. Div. of Youth & Fam. Servs. v. M.G., 427 N.J. Super. 154, 174 (App. Div. 2012). Moreover, "[a]n expert medical opinion contained in a report is generally inadmissible under [N.J.R.E. 808's] test because of the complexity of the analysis involved in arriving at the opinion and the consequent need for the other party to have an opportunity to cross-examine the expert."

N.T., 445 N.J. Super. at 501 (alteration in original) (quoting N.J. Div. of Youth & Fam. Servs. v. B.M., 413 N.J. Super. 118, 130 (App. Div. 2010)).

Division reports are generally admissible under the business-record exception to hearsay. See id. at 493-96. Because "requiring all [Division] personnel having contact with a particular case to give live testimony on all the matters within their personal knowledge would cause an intolerable disruption . . . it becomes necessary to allow certain evidence to be produced in a hearsay form." Id. at 496 (alteration in original) (quoting In re Guardianship of Cope, 106 N.J. Super. 336, 343 (App. Div. 1969)). Therefore, statements to the report's author "by Division 'staff personnel (or affiliated medical, psychiatric, or psychological consultants), [made based on] their own first-hand knowledge of the case, at a time reasonably contemporaneous with the facts they relate, and in the usual course of their duties with the' Division" are admissible. Ibid. (quoting Cope, 106 N.J. Super. at 343); see also Hahnemann Univ. Hosp. v. Dudnick, 292 N.J. Super. 11, 17-18 (App. Div. 1996) (finding "the foundation witness generally is not required to have personal knowledge of the facts contained in the record").

However, hearsay embedded in Division records must satisfy a separate hearsay exception. See N.J. Div. of Child Prot. & Permanency v. R.W., 438 N.J.

Super. 462, 466-67 (App. Div. 2014).  But, where "objectionable hearsay is admitted in a bench trial without objection," it is "presume[d] that the fact-finder appreciates the potential weakness of such proofs, and takes that into account in weighing the evidence."  N.J. Div. of Child Prot. & Permanency v. J.D., 447 N.J. Super. 337, 349 (App. Div. 2016).  "[A]n appellant faces an especially high hurdle in an appeal . . . to establish that the admission of such evidence constitutes 'plain error' . . . ."  Ibid. (citing R. 2:10-2).

Defendant did not object to the admission of the investigation summary report or the medical records on hearsay or any other grounds.  Instead, she opted to await this appeal to assert for the first time that the report and medical records contain an inadmissible hearsay diagnosis that W.A. suffered from NAS, and that the court therefore erred by relying on the diagnosis as the basis for its determination W.A. was actually harmed by defendant's admitted continuous use of oxycodone and marijuana during her pregnancy with W.A.

We generally do not consider an issue raised for the first time on appeal "'unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.'"  N.J. Div. of Youth & Fam. Servs. v. B.H., 391 N.J. Super. 322, 343 (App. Div. 2007) (quoting Nieder v. Royal

Indem. Ins. Co., 62 N.J. 229, 234 (1973)).  Neither of those circumstances is present here.

Moreover, challenging the admission of evidence for the first time on appeal "is barred by the invited error doctrine."  J.D., 447 N.J. Super. at 348 (citing N.J. Div. of Youth & Fam. Servs. v. M.C. III, 201 N.J. 328, 340-41 (2010)).  "The doctrine of invited error . . . bar[s] a disappointed litigant from arguing on appeal that an adverse decision below was the product of error, when that party urged the lower court to adopt the proposition now alleged to be error."  M.C. III, 201 N.J. at 340 (quoting Brett v. Great Am. Recreation, 144 N.J. 479, 503 (1996)).  Where, as here, a party does not object to the admission of evidence, the party effectively "consent[s] to the admission of the [evidence]," see id. at 341, and thereby deprives the other parties "of the opportunity to overcome [the] objection[,] . . . [to] take[ ] steps to satisfy any evidentiary requirements [thereafter] needed for the admission of the [evidence objected to,] or [to] present[ ] [alternative evidence] in place of the [evidence objected to]."  Ibid.

Nonetheless, an appellate court will reverse an error not brought to the attention of the trial court if "the appellant shows . . . it was 'plain error,' that is, 'error clearly capable of producing an unjust result.'"  B.H., 391 N.J. Super. at

343 (citing R. 2:10-2). "[A]n appellant faces an especially high hurdle in an appeal . . . to establish that the admission of [unopposed] evidence constitutes 'plain error' . . . ." J.D., 447 N.J. Super. at 349 (citations omitted).

We recognize it is not the Family Part's "responsibility . . . to intervene with a well-founded hearsay objection, whenever counsel choose not to raise one of their own." Ibid. "A party is free to waive objection to the admission of hearsay evidence" and "[i]n some cases, parties may have no reason to question the accuracy of such hearsay, or may make 'a strategic decision to try the case based on the documents, instead of possibly facing a witness's direct testimony.'" Ibid. (quoting N.T., 445 N.J. Super. at 503).

Here, although defendant failed to object to the court's consideration of the inadmissible hearsay evidence concerning W.A.'s NAS diagnosis, we vacate the court's orders and remand for further proceedings. As we explain, based on the record presented, the court erred by relying on the hearsay NAS diagnosis in W.A.'s medical records and, depending on circumstances that are not clear from the record but must be addressed on remand, the error may have constituted plain error.

The court relied on the NAS diagnosis as the basis for its determination defendant's admitted drug use during her pregnancy caused actual harm to W.A.

See N.J.S.A. 9:6-8.21(c)(4)(b). Indeed, it was the NAS diagnosis that linked W.A.'s test results, ailments, treatment, and asserted withdrawal symptoms with defendant's drug use during her pregnancy. But, evidence of the NAS diagnosis existed only in the hearsay statements concerning the diagnosis in W.A.'s medical records.

Complex medical diagnoses contained in medical records are inadmissible under N.J.R.E. 803(c)(6), see, e.g., Brun v. Cardoso, 390 N.J. Super. 409, 421-22 (App. Div. 2006), and, in our view, the NAS diagnosis on which the court founded its abuse-or-neglect finding constituted a complex diagnosis. The medical records reflect that the diagnosis was based on an analysis and consideration of various data, information, and observations made by hospital personnel and the evidence presented did not permit a finding NAS is "a straightforward, simple diagnosis based upon objective criteria or one upon which [no] reasonable professionals could not differ" such that testimony from a competent witness was not required to properly establish it.[4] M.G., 427 N.J. at 174.

---

[4] For example, W.A.'s medical records show the NAS diagnosis was founded on defendant's admitted drug use and positive drug tests, W.A.'s positive drug tests, and medical staff observations and grading according to a Finnegan scale, about which no evidence was admitted at trial. Lacking any testimony about the

The NAS diagnosis could not be properly admitted as hearsay embedded in the medical records that were properly admitted under N.J.R.E. 803(c)(6), unless the court made the findings required under N.J.R.E. 808, which provides:

> Expert opinion which is included in an admissible hearsay statement shall be excluded if the declarant has not been produced as a witness unless the court finds that the circumstances involved in rendering the opinion, including the motive, duty, and interest of the declarant, whether litigation was contemplated by the declarant, and the complexity of the subject matter, and the likelihood of accuracy of the opinion, tend to establish its trustworthiness.

As we explained in N.T., in the context of a diagnosis included in a Division report, "diagnoses and opinions" embedded in evidence otherwise admissible as a business record under N.J.R.E. 803(c)(6) must separately satisfy the requirements of N.J.R.E. 808. 445 N.J. Super. at 502. And, the determination of trustworthiness under N.J.R.E. 808 includes an assessment of whether the opinion or diagnosis is "too complex for admission without the expert testifying subject to cross-examination." Ibid. When a competent witness does not testify as to the opinion or diagnosis, N.J.R.E. 808 "requires exclusion of" the diagnosis or opinion embedded in an otherwise admissible

_____

precise basis for the NAS diagnosis, we are unable to determine if there were any other factors evident in the medical records that had been relied on to support the diagnosis.

business record under N.J.R.E. 803(c)(6) "'unless the trial judge makes specific findings'" required under N.J.R.E. 808.  N.B., 452 N.J. Super. at 526 (quoting N.T., 445 N.J. Super. at 501).

The trial court did not make the required findings under N.J.R.E. 808 to support its acceptance of the NAS diagnosis on which its finding of abuse or neglect rests.  That is explained by defendant's decision not to object to the admission of the medical records that included the embedded hearsay diagnosis.  This is not a case where we can properly assume the court "appreciate[d] the potential weakness of" the diagnosis or took the "potential weakness of" the diagnosis "into account in weighing the evidence."  J.D., 447 N.J. Super. at 349.  To the contrary, the court's abuse-or-neglect finding rests squarely on the NAS diagnosis and, therefore, presents the possibility that the court's reliance on the diagnosis, in the absence of the requisite findings under N.J.R.E. 808, constituted an error that is clearly capable of producing an unjust result.  R. 2:10-2.

We therefore vacate the court's February 22, 2022 order finding defendant abused or neglected W.A. and the court's May 10, 2022 order dismissing the Title Nine proceeding.  We remand for the court to make appropriate findings under N.J.R.E. 808 as to the admissibility of the NAS diagnosis.  Our expression

of the view that the NAS diagnosis is a complex diagnosis is based on the limited information we have gleaned from the record and shall not be binding on the remand court in making its findings under N.J.R.E. 808. Because defendant did not object to the admission of the medical records that included the NAS diagnosis at trial, on remand the Division may present additional competent evidence establishing the diagnosis and may argue that the other evidence introduced at the trial, independent of the NAS diagnosis, supported a determination that defendant's drug use during her pregnancy caused actual harm to W.A. See generally A.L., 213 N.J. at 13.

The court shall conduct such proceedings as it deems appropriate on remand. If the court finds the NAS diagnosis is admissible under N.J.R.E. 808, it shall enter an order finding defendant abused or neglected W.A. If the court finds the NAS diagnosis is not admissible under N.J.R.E. 808 because it is a complex diagnosis, the Division shall be permitted to present additional evidence to support admission of the medical records and the diagnosis. The court shall then consider the other evidence admitted at the trial and any additional evidence presented by the Division and decide anew whether the Division carried its burden of establishing defendant's drug use during her pregnancy caused actual harm to W.A.

Because we remand for further proceedings on the Division's claim defendant abused or neglected W.A., we find it premature to consider at this time defendant's claim trial counsel was ineffective. We do not offer any opinion on the claim, and defendant is free to raise it again on appeal in the event she receives an adverse judgment following the remand.

Vacated and remanded for further proceedings in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION